Haspel v. O'Brien, Appellant.

*Statutes—Repeal—Re-enactment.*

Where a statute is repealed and its provisions are at the same time re-enacted by the repealing act, the effect is that the earlier statute is not in fact repealed, but its provisions continue in active operation, so that all the rights and liabilities incurred thereunder are preserved and may be enforced.

*Municipal liens—Mortgages—Priority of lien—Statutes—Repeal—Re-enactment—Acts of February 3, 1824, P. L. 18 and June 4, 1901, P. L. 364.*

Municipal claims for taxes, water rents, paving, etc., assessed and filed as liens of record after the passage of the Act of June 4, 1901, P. L. 364, have priority over mortgages made before that act, in the distribution of the proceeds of sheriff's sales under the mortgages, where such proceeds are not sufficient to pay both liens and mortgages.

While the Act of June 4, 1901, P. L. 364, in terms repeals the Act of February 3, 1824, P. L. 18, yet as the provisions of the act of 1824, giving priority to municipal liens are re-enacted in substantially identical terms in the later act, the law has not been changed by the act of June 4, 1901.

The words in the act of 1901 "with which the said property may become charged, or for which it may become liable," may properly be construed as referring to the dates of the sales thereafter to be made under the act rather than the date of the act itself.

Argued March 27, 1907. Appeals, Nos. 57, 58, 59, 60, 61, 62, 68 and 70, by defendants, from judgment of Superior Court, Oct. T., 1906, Nos. 104, 226 and 229, affirming judgment of C. P. No. 1, Phila. Co., Dec. T., 1905, No. 1,214, and judgment of C. P. Del. Co. March T., 1905, No. 108, making abso-

lute rule to pay over money in case of Lewis A. Haspel, Receiver of the United Building and Loan Association of Philadelphia, v. Daniel O'Brien, Mortgagor, Wilson H. Brown, Sheriff, and the City of Philadelphia, and the cases of Lewis A. Haskel, Receiver, v. May Ellen Robinson, Mortgagor, and the City of Philadelphia, and of Lydia Gibbons et al. v. I. Engle Cochran, Jr., et al. Before MITCHELL, C. J., FELL, MESTREZAT, POTTER and STEWART, JJ. Reversed.

Appeal from the Superior Court.
The opinion of the Supreme Court states the case.

*Error assigned* was the judgment of the Superior Court.

*John G. Johnson,* with him *Mayne R. Longstreth, James Alcorn, John L. Kinsey, A. A. Cochran* and *Geo. M. Booth,* for appellants.

*Wayne P. Rambo* and *Jos. H. Hinkson,* with them *Albert L. Lewis* and *Ormond Rambo,* for appellee.

OPINION BY MR. CHIEF JUSTICE MITCHELL, May 6, 1907:

These cases present the same question, and were argued together. The contest is for priority of payment out of the proceeds of sheriff's sales between mortgages made before June 4, 1901, and municipal claims for taxes, water rents, paving, etc., assessed and filed as liens of record after that date, where the sales were made on the mortgages, but the proceeds were not sufficient to pay both. It turns on the construction of the Act of June 4, 1901, P. L. 364.

By the Act of February 3, 1824, P. L. 18, which was in force until 1901, the taxes, etc., were entitled to be first paid. But the act of 1901 expressly repealed the act of 1824, while re-enacting in substantially identical terms its provisions as to priority of payment of liens out of the proceeds of sheriff's, sales.

The act of 1901, sec. 2, after declaring that taxes shall be a "first lien" on the property, provides that "such liens shall have priority to, and be fully paid and satisfied out of the proceeds of any judicial sale of said property before any other

obligation, judgment, claim, lien or estate with which the said property may become charged, or for which it may become liable."

Section 3 makes a similar provision in regard to municipal claims, except that they are only declared a lien, the word "first" being omitted.

The words, "with which the said property may become charged, or for which it may become liable," are relied upon to show that taxes, etc., are only given priority to mortgages, obligations, etc., created after the date of the act, and that their priority to obligations previous in date being only by virtue of the act of 1824 is lost by the repeal of that act.

It must of course be conceded that statutes are presumed to be prospective only and the phrase "may become" prima facie refers to the future. It is, however, a question of the legislative intent, and it is by no means certain that the future period meant to be referred to in this phrase is the date of the act rather than the dates of the sales thereafter to be made under it. So understood it would mean that taxes are to be paid before other obligations with which the property is charged or chargeable at the time of the sale or distribution. This view derives considerable force from the closeness with which the act of 1901 follows the language of the act of 1824 up to this point, and then makes a significant change. The corresponding section of the act of 1824 reads, "and the said lien shall have priority to and shall be fully paid and satisfied before any recognizance, mortgage, judgment, debt, obligation or responsibility which the said real estate may become charged with or liable to, from and after the passing of this act." The omission of the words "from and after the passing of this act" from the act of 1901 leads strongly to the inference that the date of the act was not the future time in the legislative mind when using the phrase "may become charged with." And if the date of the act be excluded, then the only other time indicated is the time of the sale under which distribution is to be made. This, therefore, is the more reasonable construction.

But even if this were less clear than it is, all doubt would be resolved by a consideration of the entire act. There was good reason for the reference to its passage in the act of 1824 and the omission of such reference in the act of 1901. The

two statutes had the same intent in regard to the priority of payment of tax liens, but they were passed under different circumstances and for a different purpose. The act of 1824 changed the existing law and gave tax liens a priority they had not previously possessed. A due regard for rights already acquired demanded that the new precedence given to the liens should be strictly prospective only. But the act of 1901 was not intended to make any change in the law in this regard. The precedence which it gave to tax liens they already possessed by the existing law of 1824, and the only purpose of the re-enactment was to prevent its destruction by the repeal of the previous act.

The express repeal of the act of 1824 was not for the purpose of changing the law, but in pursuance of a plan for simplifying the sources and facilitating the ascertainment of the statute law on the general subject of tax liens. The usual legislative phrase is that all acts and parts of acts inconsistent with the act passed are repealed. This is only ex majore cautela, for that would be the effect without such clause. But that phrase leaves open to question what acts are inconsistent. The express repeal saves all controversy on that subject. But the intention is the same, and when an act expressly repeals a former one and at the same time re-enacts its exact provisions the intent is manifest that there shall be no change in the law. This is the general rule as shown by the numerous authorities cited by appellant, the effect of which is thus summed up in 26 Am. & Ency. of Law (2d ed.), 758, title "Statutes," IX, 3, c: " Where a statute is repealed and its provisions are at the same time re-enacted by the repealing act, the effect according to the great weight of authority, is that the earlier statute is not in fact repealed, but its provisions continue in active operation, so that all the rights and liabilities incurred thereunder are preserved and may be enforced."

This rule is particularly sound and applicable in the construction and interpretation of an act like that of 1901, which, is a revision and consolidation for clearness, certainty and convenience of all the prior statutes on the subject, a partial codification to the purpose of which amendment or change was only incidental. This appears from the concluding sen-

tence of the last clause : " it being intended that this act shall furnish a complete and exclusive system in itself, so far as relates to the practice and procedure for the filing, collection and extent of tax and municipal claims, the right to file which accrued after the approval of this act." The purpose and desirability of such revision are shown preceding the foregoing declaration of intent, in the enumeration by date and title and express repeal of 224 acts and parts of acts ranging from 1814 to 1899.

From 1824 there has been no time when the law on the subject has been different from what it is to-day, for the moment the act of 1824 was repealed by the act of 1901 eo instanti the former law was continued by the same act. The tax claims in the present case were entitled, therefore, to the established priority without regard to their date.

The judgments of the Superior Court and of the common pleas are reversed, and distribution directed to be made in accordance with this opinion.