## Erie, Appellant, *v.* Piece of Land.

Argued May 20, 1940. Before SCHAFFER, C. J.,
MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*Byron A. Baur,* with him *Edward M. Murphy,* City Solicitor, and *Henry R. Jeffs,* Assistant City Solicitor, for appellant.

*S. Y. Rossiter,* with him *Enoch C. Filer,* for appellees.

OPINION BY MR. JUSTICE LINN, June 25, 1940:

The City of Erie appeals from the dismissal of its petition for an order on the sheriff to sell, on its judgment for city taxes, certain real property clear of liens. The petition averred the judgment and that the city had fixed an upset price of $128,244.01 required to pay all taxes and municipal claims but that such a bid was not received when the property was offered by the sheriff. A rule was granted requiring respondents, parties interested in a mortgage on the property, to show cause why it should not be sold "freed and clear of their respective claims, mortgages, charges and estates" pursuant to the Act of May 16, 1923, P. L. 207, and supplements (53 PS section 2051). An answer was filed by Erie Elks Building Association, Bondholders Protective Committee, and Harry W. Mehl, trustee for mortgage bondholders. Among other things, they denied that the Act of May 16, 1923, P. L. 207, authorized the divestiture of the lien of respondents' mortgage dated May 3, 1922, and recorded prior to the Act of 1923. They agree that the Municipal Tax Lien Act of 1901, P. L. 364, as amended, was, as respects this proceeding, in substance the same as the Act of 1923, but contend that it had been repealed by the Act of 1921, P. L. 1089, before the mortgage was recorded. Their position, shortly stated, is that as the mortgage became a lien after the Act of 1901 was repealed and before the Act of 1923 was passed, the Act of 1923 could not, constitutionally, be applied to divest the lien of their mortgage. The

learned court below accepted that view and dismissed the petition.

We think there was error in two respects: (1) in holding that, as to city taxes, the Act of 1921, P. L. 1089, repealed the Act of June 4, 1901, P. L. 364, as amended; and (2) altogether apart from that conclusion, in holding that resort to the Act of 1923, P. L. 207, if necessary to sustain the proceeding, resulted in an impairment of the mortgage contract.

First. The Act of June 4, 1901, P. L. 364, was said by MITCHELL, C. J., in *Haspel v. O'Brien*, 218 Pa. 146, 149, 67 A. 123, to be "a revision and consolidation for clearness, certainty and convenience of all prior statutes on the subject, a partial codification to the purpose of which amendment or change was only incidental." One of the subjects included in the Act was "city taxes." That act was amended May 28, 1915, P. L. 599. Those acts provided (section 32 of the Act of 1901 and section 9 of the Act of 1915) for the discharge of the lien of a mortgage if necessary to collect the taxes in full. They were followed by the Act of 1921, P. L. 1089, which reënacted provisions for the sale of land for certain tax claims free of mortgage liens and repealed inconsistent legislation. This act, the learned court thought, repealed the Act of 1901 as to all tax liens instead of those specified in the repealing clause; as a result it was held that there was no legislation, when the mortgage was recorded, providing that its lien could be divested by a sale on a judgment for city taxes. That conclusion must be rejected.

In section 1 of the Act of 1901, said to be repealed, it was provided "That the word 'taxes,' as used in this act, means any county, city, borough, township, school, bridge, road, or poor taxes." The Court is now concerned with the words "city taxes" in that provision. It was also provided that "The words 'tax claim,' as used in this act, mean the claim filed to recover taxes." "Tax claim" would then include a claim for "city" taxes.

As long as the word "city" was not taken out of the law by some repealing statute, "city" taxes remained subject to the act. We then examine the scope of the repealing provision of the Act of 1921 to see whether the "city" tax provision of the Act of 1901 was repealed. Section 32, P. L. 1102, reads: "The act [of 1901] . . . and the several amendments and supplements thereto, so far as the same relate or apply to tax liens and tax claims are hereby repealed. . . ." The taxes and tax claims, so referred to, are defined in section 1 of the repealing Act of 1921 at page 1089 as follows: "The word 'taxes,' as used in this act, means any county, bridge, road, borough, township, school, or poor taxes. The words 'tax claims' or 'liens,' as used in this act, mean the claim filed to recover taxes." It will be noted that the word "city," which is in the Act of 1901 and in the amendment of 1915, is omitted. We must read the words "tax liens" and "tax claims" as used in the repealing section in the light of the definition of the words "taxes," "tax claims" or "liens" as defined in section 1 of the act, and when that is done it becomes clear that they do not comprehend city taxes because city taxes were omitted from the definitions given by the legislature in the enactment. The result must be that city taxes and the method of collecting them remain subject to the Act of 1901 as amended in 1915.

The Act of 1923, P. L. 207, referred to above, repealed inconsistent legislation, but in substance reënacted section 9 of the Act of 1915 and expressly included city taxes. As there was no repeal, by the Act of 1921, of the provisions relating to city taxes in the Acts of 1901 and 1915, the Act of 1923 was a mere continuation of what had been the law all along. The rule is stated in *Haspel v. O'Brien*, 218 Pa. 146, at page 149, 67 A. 123 (1907), by MITCHELL, C. J.: " 'Where a statute is repealed and its provisions are at the same time reënacted by the repealing act, the effect according to the great weight of authority, is that the earlier statute is not in

fact repealed, but its provisions continue in active operation, so that all the rights and liabilities incurred thereunder are preserved and may be enforced.' This rule is particularly sound and applicable in the construction and interpretation of an act like that of 1901, which is a revision and consolidation for clearness, certainty and convenience of all the prior statutes on the subject, a partial codification to the purpose of which amendment or change was only incidental."

Second. We are equally clear that even if the Acts of 1901 and 1915 had not been in effect when the mortgage was recorded, the city would be entitled to the benefit of the Act of 1923 and that no impairment of the contract between the mortgagor and the mortgagee would result from the discharge of the lien of the mortgage if the mortgagee elects not to pay the taxes. The purpose of such legislation is to enable the government to collect its tax. For as long as ten years, taxes have remained unpaid on this mortgaged property. The double nature of a mortgage as an estate and as a security is familiar. By recording the mortgage, the mortgagee obtained a lien which had certain statutory preference. In providing for the collection of taxes, the Act of 1923, in section 31, P. L. 207, 221-222, 53 PS section 2051, provided what might be done in the future if, after an attempt to sell for taxes, the property could not be "sold for a sum sufficient to pay all taxes and municipal claims, together with the costs thereon." After a tax claim had been filed a year, the city was authorized to present its petition stating that it had exposed the property to sheriff's sale and had been unable to obtain a bid sufficient to pay the upset price in full. Thereafter, the court was authorized to grant a rule on all parties interested to show cause "why a decree should not be made that said property be sold, freed, and cleared of their respective claims, mortgages, charges, and estates" and provided that after hearing the court might order "that said property be sold at a subsequent sheriff's sale day,

to be fixed by the court without further advertisement, clear of all claims, liens, mortgages, charges, and estates, to the highest bidder at such sale; and the proceeds realized therefrom shall be distributed in accordance with the priority of such claims; and the purchaser at such sale shall take, and forever thereafter have, an absolute title to the property sold, free, and discharged of all tax and municipal claims, liens, mortgages, charges, and estates of whatsoever kind, subject only to the right redemption as provided by law." This procedure was followed in this case. That the mortgage was made and recorded before the act was passed, is no constitutional objection to the application of the Act of 1923. The statute applies to all mortgaged lands; the legislature had the power to tax the mortgagee's interest in the land. The procedure enables the mortgagee to have his day in court and protect his lien by paying the tax if he does not wish to lose the lien; he has the alternative; the statute provides: "Any person interested may, at any time before the sale, pay the petitioner the whole of his claim, with interest and costs, whereupon the proceedings on petition shall at once determine." There is no legal reason why the legislature should not require a mortgagee, who has had the protection of the government, to submit to the collection of the taxes out of the land against which they are assessed if his own debtor neglects to pay them. The procedure was prospective; that its application would operate on relations theretofore existing did not make the statute retroactive in any prohibited sense: compare *City of Johnstown v. Dibert*, 88 Pa. Superior Ct. 117, 120. The land had always been subject to taxation. If a mortgagee elects not to foreclose for default in payment of taxes on the land he holds as security, he does not, by his election, exempt his interest or estate in the land from taxation; no law gives him such right of exemption. When he secured his loan by taking the mortgage, he did so with knowledge that the land was,

and would continue to be, taxed. He will not be heard to say that because he had a lien under the recording acts, the government must go without its taxes. All his relations growing out of his contract with his debtor were subject to the implied condition that the taxes must be paid out of the land. There is therefore no impairment of his contract with the mortgagor.

The subject has arisen in other jurisdictions as appears in this quotation from the opinion of MAGRUDER, J., in *People of Puerto Rico v. Federal Land Bank of Baltimore*, 108 F. 2d 275, 277 (C. C. A. 1st, 1939) : "Appellee concedes that its vested mortgage interest may, even by subsequent legislation, be subordinated to a lien for taxes levied on the land, where the lien is established in support of taxes imposed and accruing from and after the date of such legislation. *Wabash E. Ry. Co. v. Commissioners*, 134 Ill. 384, 25 N. E. 781, 10 L. R. A. 285; *German Savings & Loan Society v. Ramish*, 138 Cal. 120, 124, 125, 69 P. 89, 70 P. 1067; *Murphy v. Beard*, 138 Ind. 560, 38 N. E. 33; see *Provident Institution for Savings v. Mayor and Aldermen of Jersey City*, 113 U. S. 506, 514-516, 5 S. Ct. 612, 28 L. Ed. 1102; Note, 30 L. R. A., N. S., 762. We decided nothing to the contrary in *Domenech v. Lee*, 1 Cir., 66 F. 2d 31, which related to excise taxes, not taxes on real estate. It is contended, however, that the legislature cannot, to the prejudice of pre-existing mortgage interests, create a new tax lien or revive an expired one, in support of past-due taxes levied on the land. In our opinion the taxing power is not subject to this limitation. The needs of revenue are served by the collection of delinquent taxes as well as by the collection of current taxes." In *Bryan's Appeal*, 101 Pa. 389, 393, PAXSON, J., said: "It has never been held that charges upon or estates in land created by the owner thereof can avail as against the taxing power of the Commonwealth. Municipal liens for grading and paving streets are a species of taxation and come within the rule. Such liens bind the entire

estate in the land, except where an Act of Assembly directs otherwise. If it were not so, the owner of real estate could wholly defeat the taxing power by charging it with the payment of a sum of money equal to its full value."

The appellees refer to an Act of May 23, 1923, P. L. 316, validating tax liens filed after the Act of May 24, 1921, P. L. 1089, (considered above) and excepting from its application "any cases already adjudicated or to any suits now pending or undetermined." That act does not apply; the judgment on which the city desired execution did not require validation. They also refer to statutes[1] "relating to judicial sales . . . and the preserving of the lien of mortgages. . . ." The purpose of that legislation is familiar.[2] The statutes invoked by the City of Erie give the mortgagee his day in court to maintain his lien by paying the taxes on the mortgaged land; he has the election and determines whether his lien shall continue or be discharged.

Appellees also rely on *Scranton Lackawanna Trust Co. v. same, Guardian,* 310 Pa. 125, 165 A. 42, deciding the right to the proceeds of a sheriff's sale claimed by a mortgagee on his mortgage and by the Commonwealth on a collateral inheritance tax assessment against the estate of an owner who held subject to the mortgage. There, the Commonwealth's lien was not on the land *qua* land, as it is in the present case, but on the mortgagor's equity of redemption; the inheritance tax was, as the Court said, (at p. 127), "not an assessment of decedent's interest in the property sold by the sheriff, but was of all the property which she owned at the time of her death, whether real or personal, after deducting therefrom her debts, including the face amount of the

---

[1] Act of May 8, 1901, P. L. 141, amending the Act of May 19, 1893, P. L. 110, again amended April 30, 1929, P. L. 874, 21 PS section 651.

[2] See *Girard Life Insurance Co. v. The Farmers' and Mechanics' National Bank,* 57 Pa. 388; *Fisher v. Connard,* 100 Pa. 63.

mortgage, and the expenses properly allowed as a credit on the gross value of the estate. . . ." That decision cannot aid appellees.

The point that the title to the Act of 1923 was not sufficient does not merit discussion: compare *Miller v. Northampton County,* 307 Pa. 550, 162 A. 209.

The order appealed from is reversed and the record is remitted for further proceedings.

DISSENTING OPINION BY MR. JUSTICE MAXEY:

I find no warrant whatever for holding that the Act of June 4, 1901, P. L. 364, was not repealed *in toto* by the Act of May 24, 1921, P. L. 1089. Section 32 of this latter Act says: "The Act approved the 4th of June, 1901, P. L. 364, entitled [giving the full title], and the several amendments and supplements thereto, so far as the same relate or apply to tax liens and tax claims are hereby repealed." It is argued that since the Act of 1921, section 1, declares: "The word 'taxes' as used in this act means any county, bridge, road, borough, township, school or poor taxes," that all of the 1901 Act was repealed except that part which relates to city taxes. If this view is accepted we have the anomalous situation that the Act of 1901 was repealed as to seven kinds of taxes but left in force as to city taxes. This interpretation is not only not required by the context but is in conflict with it. Section 32 of the Act of 1921 plainly says that the Act of June 4, 1901, is repealed. The words "the same" which follow the phrase "the several amendments and supplements thereto," clearly refers to that phrase appearing before the pronoun "same." Webster's New International Dictionary defines the pronoun "same" as "the one just referred to—now chiefly archaic except in legal language." The things "just referred to" were "the several amendments and supplements thereto." Section 33 of Article III of the Statutory Construction Act of May 28, 1937, P. L. 1019, says that in construing an act "General words shall be con-

strued to take their meaning and be restricted by preceding particular words." The general words, "the same," therefore must be restricted by the preceding particular words "amendments and supplements." Section 52 of the Construction Act says that, in ascertaining the intention of the legislature, courts must consider "that the legislature does not intend a result that is absurd . . . or unreasonable." To hold that section 32 of the Act of 1921 repealed the Act of 1901 as to county, bridge, road, borough, township, school and poor taxes is to reach a result that is "absurd and unreasonable." No possible reason can be assigned for making city taxes an exception in this repealing clause 32. No proper purpose could be served by making an exception to it and the legislature nowhere indicated any intention of making city taxes an exception to the repealing clause.

That those able lawyers who make it their business to annotate Pennsylvania statutes consider the entire Act of 1901 repealed by the Act of 1921, is evidenced by an examination of Purdon's Pennsylvania Statutes, which are widely used by the bench and bar of Pennsylvania. On page 155 of Purdon's Tables, there appears in the last column under 1901 P. L. 364, this notation: "Entire act including amendments or supplements repealed as to tax liens and tax claims 1921, May 24, P. L. 1089, sec. 32. Supplied 1923, May 16, P. L. 207." Again, in 53 Purdon Statutes, sec. 2051, pp. 457, 461, 462, 465, and elsewhere in the notes, the Act of June 4, 1901, is referred to as having been "repealed" by section 32 of the Act of 1921 and "supplied" by the Act of 1923. Nowhere in Purdon's Statutes is any part of the Act of 1901 treated as being in force after the passage of the Act of 1921. That the careful editors of Purdon's Statutes, who are adept and experienced in determining whether or not statutes have been repealed, interpret section 32 of the Act of 1921 as *repealing the Act of 1901 in its entirety* harmonizes with my conviction that

section 32 of the Act of 1921 does in fact repeal in toto the Act of 1901. Nowhere in Purdon's Statutes or in Pennsylvania decisions is there any indication that any part of the Act of 1901 was operative after the repealing clause in section 32 of the Act of 1921 was passed. On the contrary, the very language of section 2 of the Act of 1923 shows that the legislature recognized the fact that the Act of 1901 had been repealed in toto by the Act of 1921. This section provides: "All taxes which may hereafter be lawfully imposed or assessed on any property in this Commonwealth, and all taxes heretofore lawfully imposed or assessed by any municipality on any property in this Commonwealth for the years one thousand nine hundred and twenty-one, one thousand nine hundred and twenty-two, and one thousand nine hundred and twenty-three, in the manner and to the extent hereinafter set forth, shall be and they are hereby declared to be a first lien on said property, together with all charges, expenses, and fees added thereto for failure to pay promptly; and such liens shall have priority to and be fully paid and satisfied out of the proceeds of any judicial sale of said property, before any other obligation, judgment, claim, lien, or estate with which the said property may become charged or for which it may become liable, save and except only the costs of the sale and of the writ upon which it is made." If the Act of 1901 had not been entirely repealed by the Act of 1921, why was it necessary in the Act of 1923 to specifically declare that taxes imposed "by any municipality" on any property in this Commonwealth for the years *1921, 1922,* and *1923* shall be a first lien on said property. If the Act of 1901 was operative during those years in respect to municipal taxes, as the majority opinion declares it was, there was no purpose served by the just quoted provision in the Act of 1923. And why were only taxes imposed "by any municipality" thus referred to, while *no other* taxes were mentioned in that paragraph, if the legislature was not thus

recognizing the fact that the Act of 1921 had *entirely* repealed the Act of 1901, and that the word "municipality" (or "city") had been inadvertently omitted from the second clause of paragraph one of the Act of 1921?

The majority opinion takes the position that city taxes and the methods of collection therefor remained subject to the Act of 1901, as amended in 1915, section 9 of which is, in substance, the same as section 31 of the Act of 1923, P. L. 207, 53 PS sec. 2051. Since section 9 of the Act of May 28, 1915, P. L. 595, refers to "the lien of a tax," and since after the repeal in 1921 of the Act of 1901 there was no lien for city taxes until the Act of 1923 was passed, it follows that the quoted section 9 of the Act of 1915 is of no materiality whatever in determining the question before us.

Since the Act of 1901 was repealed by the Act of 1921, then in 1922 when the mortgage in question was recorded, city taxes were *not* a lien on the mortgaged premises. "A lien is a hold or claim which one person has upon the property of another as a security for a debt or charge": Bouvier. The city in 1922 had *no such hold* on this seated land. Nothing can be more certain than the fact that as against the mortgage, the city's claim for taxes in 1922 had to take a secondary place. In *Gormley's Appeal*, 27 Pa. 49, this court, in an unanimous opinion written by Justice BLACK, said: "Liens are to be paid according to their priority, and the mortgage is several years older than the taxes. The legislature might give a lien for taxes a preference to all others; but this has not been done. The law says that certain taxes shall be a lien merely, and that does not authorize us to say that it is more than any other lien, taking grade according to its date." In *Briggs' Appeal*, 1 Walker 199, this court in a Per Curiam opinion said: "As a general rule, however, taxes assessed upon land are not a preferred lien thereon. It requires an act of Assembly expressly so declaring them, to give that preference."

That this mortgage constituted when recorded a first lien on the premises is beyond doubt, the Act of 1901 not then being in effect. A mortgage gives its owner an estate in the premises mortgaged. Chancellor KENT defines a mortgage as "the conveyance of an estate by way of pledge for the security of debt, and to become void on payment of it." When the mortgagee acquired its estate in this land, there was no act which made taxes on seated land in cities a first lien. Such taxes were payable out of personalty. There was then no provision in the law under which the lien of the mortgage could be divested on a sale for unpaid city taxes. The court below held, and, I think, properly that "the mortgagee obtained certain vested rights, and at a time when there was no Act of Assembly which might interfere with the same."

The second part of the majority opinion assumes that even if the Act of 1901 had not been in effect in 1922, the Act of 1923 was retroactive to such an extent that it subordinated the appellees' mortgage of May 22, 1922, to subsequently created liens for city taxes. The first answer to that is the Act of 1923 does *not purport* to do any such thing. It is a settled principle in interpreting statutes that they are presumed to operate *pro*spectively and not *retro*spectively. The presumption is that they are *not* intended to affect *existent* rights. Justice WOODWARD, speaking for this court in *Dewart v. Purdy*, 29 Pa. 113, 117, declared "retroactive legislation" to be "uncongenial to our institutions and hazardous to private rights." He refers to the fact that Blackstone said that all laws should commence "in futuro."

If the legislature in 1923 possessed the power to enact a law which would work retrospectively and place the mortgagee's estate in the land in a position second to the lien then (i. e., in 1923) created for city taxes, it should have made it clear in that act that it was intended to operate retrospectively and the "estates" it referred to in the act meant these *subsisting* mortgages

(i. e., "estates in the property") as well as mortgages which might *thereafter* be executed and recorded. The Statutory Construction Act of 1937 provides in section 56 : "No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature." That merely expresses what has always been the rule. Endlich on "The Interpretation of Statutes," sec. 271, says statutes "are construed as operating only on cases or facts which come into existence after the statutes were passed, unless a retrospective effect be clearly intended." Endlich cites as an example of this rule the following: "A provision that married women shall be bound like other persons, by estoppel in pais, was held inapplicable to the case of a mortgage made by such person before the enactment." Another example is "an act which makes certain provisions 'when any judgment is obtained' is construed as referring to such cases only 'when any judgment is *hereafter* obtained.' " In section 273 Endlich says: "It is chiefly where the enactment would prejudicially affect vested rights, or the legal character of past transactions, that the rule in question prevails. Every statute, it has been said, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, or imposes a new duty, or attaches a new disability in respect of transactions or considerations already past, must be presumed out of respect to the Legislature to be intended not to have a retrospective operation. . . ."

In *Barnesboro Boro. v. Speice,* 40 Pa. Superior Ct. 609, that court held: "Retrospective laws may be supported when they impair no contract and disturb no vested right, but only vary remedies, cure defects in proceedings otherwise fair, and do not vary existing obligations contrary to their situation when entered into and when prosecuted: *Shonk v. Brown,* 61 Pa. 320. 'Retrospective laws generally, if not universally, work injustice, and ought to be so construed only when the mandate of the legislature is imperative': *Taylor v. Mitchell,*

57 Pa. 209. 'There is no canon of construction better settled than this, that a statute shall always be interpreted so as to operate prospectively and not retrospectively unless the language is so clear as to preclude all question as to the intention of the legislature': *Neff's Appeal*, 21 Pa. 243; *McCabe v. Emerson*, 18 Pa. 111. These well-settled principles have never been departed from and have been recognized and reaffirmed in a long line of cases [citing them]."

In section 2 of the Act of 1923 it is declared that the lien "for city taxes for 1921, 1922 and 1923 shall be a first lien . . . and have priority to and be fully paid . . . before any other obligation, judgment, claim, lien or estate with which the said property *may become charged or for which it may become liable*" (italics supplied). That was a clear legislative declaration that the then created lien for city taxes should be paramount to *future* charges and estates (mortgages) but should not be paramount to *existing* charges and estates. That the Act of 1923 was to operate only *prospectively* is further shown by section 40 of that Act which unequivocally provides that *"the rights of other claimants under existing laws shall remain unaffected by its* [i. e., the act's] *passage"* (italics supplied).

The collection of taxes on property is so important to the government that the belief easily arises that taxes become ex proprio vigore a first lien on any property they are assessed against. But such is *not the fact*. They become liens against the property only when the legislature says so, as this court has heretofore said: See Justice BLACK's opinion (supra). "There is no common-law rule which makes the levy of taxes of its own force a lien on the property of the taxpayer. Unless expressly made so by statute, a tax is not a lien on property": 61 Corpus Juris, sec. 1155, p. 912. The legislature has the power to say that *in the future* all taxes shall be first liens on the properties assessed. When the legislature so declares, one taking a mortgage knows

that his mortgage is subordinate to future liens for taxes. The law *as it exists when the mortgage is* executed and recorded is a part of the contract and therefore the subordination of the mortgage to the tax lien is no impairment of the contract's obligation. In *Olyphant Borough v. Egreski,* 29 Pa. Superior Ct. 116, that court said: "The argument that a statute which gives to municipal liens the right to priority of payment over a mortgage, which is prior in point of time, impairs the obligation of contracts, and is for that reason unconstitutional, does not require serious consideration. The mortgage in the present case was taken years after the Act of 1891 had been passed, and the mortgagee accepted his security with knowledge of the fact that the property was liable to become charged with municipal assessments which would be entitled to priority of payment out of the proceeds of a sale upon the mortgage." If when the mortgage in the instant case was executed and recorded an act of assembly had made the city's claim for taxes a first lien on the property mortgaged, we would have a situation identical with that in the Olyphant case just cited, but there was no such act of assembly when this mortgage came into being.

The majority opinion cites *Bryan's Appeal,* 101 Pa. 389. The decision in that case supports in no degree the position taken in the majority opinion. In that case Justice PAXSON quotes the "Act of May 16, 1857, sec. 4, P. L. 542," which provides that "all taxes, rates and levies which may hereafter be lawfully imposed or assessed by authority of said city [Pittsburgh] on any real estate therein, shall be and they are hereby declared to be a lien thereon, . . . and that the said lien shall have priority to, and shall be fully paid and satisfied before any recognizance, mortgage, judgment, debt, obligation or rsponsibility, which the said real estate may become charged with, or liable to, from and after the passing of this Act." The important phrase is: "which may hereafter be lawfully imposed or assessed" shall be

a first lien. That act simply made a first lien of taxes as against mortgages, etc., which "may," i. e., *later,* "*become*" charges against the real estate. The city taxes in the instant case for 1921, 1922 and 1923 were *not* first liens when assessed. No one contends that "charges upon or estates in land created by the owner thereof can avail as against the taxing power of the Commonwealth." But the important point is the taxing power of the Commonwealth must act vigilantly and *in time* to make taxes a first lien. *They do not become first liens automatically.* No proposition of law is better settled than *that.*

Since the appellee obtained a first lien on the mortgaged premises in 1922 and since the Act of 1923 was obviously *not* intended to operate retrospectively so as to subordinate the mortgagee's lien to subsequently created liens for city taxes, it is not necessary to discuss the question whether the legislature had the power to thus subordinate a mortgage lien without violating the constitutional prohibition against impairing the obligation of contracts. To decide *this* case it is not necessary to decide that question.

However, there is both reason and authority to support the view that the legislature had no such power. In *Barnitz v. Beverly,* 163 U. S. 118, 125, the United States Supreme Court said, in declaring unconstitutional a state law which impaired a mortgagee's rights in a mortgage: "The obligation of a contract consists in its binding force on the party who makes it. This depends on the laws in existence when it is made. These are necessarily referred to in all contracts, and forming a part of them as the measure of the obligation to perform them by the one party, and the right acquired by the other. . . . If any subsequent law affect to diminish the duty, or to impair the right, it necessarily bears on the obligation of the contract, in favor of one party to the injury of the other; hence any law, which in its operation amounts to a denial or obstruction of the

rights accruing by a contract, though professing to act only on the remedy, is directly obnoxious to the prohibition of the Constitution."

In *Scranton Lackawanna Tr. Co., to use, v. Scranton Lackawanna Tr. Co., Guardian, et al.,* 310 Pa. 125, 165 A. 42, a controversy arose regarding the balance for distribution from the sale of a property on the foreclosure of a first mortgage. Appellee claimed the balance on account of the mortgage debt; the Commonwealth claimed the balance on account of a collateral inheritance tax assessed against the estate of a later owner, who inherited the property subject to the mortgage. This court, in affirming the order of the court below, pointed out that the Commonwealth's claim was based on the assessment of the whole of the estate and not upon decedent's interest, which was only an equity of redemption. We held that the lien of the collateral inheritance tax was restricted to that equity of redemption. We referred to the fact that the collateral inheritance tax statute which was in force when the mortgage was executed and at the time of its foreclosure was that of June 20, 1919, P. L. 521, as immaterially amended by later acts. The significant part of Justice SIMPSON's opinion in that case as applicable to the instant case, is the following: "It was also suggested that the Commonwealth's right might be sustained under section 1401 of the Fiscal Code of April 9, 1929, P. L. 343, 420. . . . The mortgage now under consideration was executed, acknowledged, delivered and recorded in 1928, and the provisions of the Code, passed in 1929, *in so far as, if at all, they might seem to impair the lien of the mortgage, as it existed at the time of its creation* [italics supplied], would be unconstitutional and void: *Brine v. Hartford Fire Ins. Co.,* 96 U. S. 627, 637." The paragraph just quoted was not necessary to the decision but its reasoning is sound and would apply to the instant case if the legislature by the Act of 1923 had attempted

to impair the lien of the mortgage by subordinating it to tax liens subsequently created.

In *National Bank of Commerce v. Jones,* 18 Okla. 555, 91 Pac. 191, the Supreme Court of Oklahoma held that an act of the legislature, which postpones an existing valid mortgage lien, and makes a subsequently created lien superior to the mortgage lien, is a law impairing vested property rights and impairing the obligations of a contract, and is void for conflict with the Constitution of the United States. That court there said: "A mortgage lien constitutes a vested property right, and, after it has attached, the legislature has no power to create a lien superior to the vested interest, or to provide that such vested lien shall be made inferior to a lien subsequently created."

In *Crowther v. Fidelity Insurance, Trust & Safe-Deposit Co., et al.,* 85 Fed. 41, the Fourth Circuit Court of Appeals held that the provision of Code Va., sec. 2485 (adopted in 1887), providing that persons furnishing certain supplies to mining or other specified companies shall have a lien prior to mortgages executed since March 21, 1877, is inoperative to displace the lien of a mortgage executed in 1881, which, at that time, became by contract a vested first lien, for to give it such an effect would be to impair the obligation of the contract.

On the question of the power of a legislature to subordinate a mortgage lien to a later tax lien, the majority opinion cites the case of *People of Puerto Rico v. Federal Land Bank of Baltimore,* 108 Fed. 2d 275. In that case the law of Puerto Rico provided that "the tax that is assessed for the current fiscal year and for the three prior fiscal years against any parcel of real property . . . shall constitute the first lien thereon." Due to economic conditions an act was passed which upon a taxpayer's application extended the time of payment "over a period of 20 years." In 1937 suits were instituted to foreclose certain mortgages on property in

Puerto Rico. Then attachments were levied on the mortgaged property to cover installments due on "extended" taxes. The District Court, upon application, cancelled these attachments and held that "the only lien for taxes which has priority to complainant's mortgage is for taxes for the current year and the three preceding fiscal years." On appeal the Circuit Court of Appeals, First Circuit, reversed the decree of the District Court. The Circuit Court pointed out that "the records do not indicate what years are covered by the attachments for extended taxes involved in this appeal. If they were for the fiscal year 1934-1935, and perhaps also for the fiscal year 1933-1934, then at the time the taxes were extended the old prior liens given by Section 315 of the Political Code were still valid and subsisting. . . . As a matter of indulgence, the tax collector refrained from enforcing the liens. As a matter of grace, the legislature prescribed that the People of Puerto Rico would not insist upon a preference over the outstanding mortgagee's interest for more than three years after the taxes became due. But the mortgagee, whose interest was at all times subordinate to the taxing power, had no vested right to a continuation of this indulgence and of this legislative grace." Since the mortgagee took the mortgage knowing that under the law then existing his mortgage would be subordinate to the lien of taxes, there was no substantial impairment of his estate in the land by the passage of the law which gave the taxpayer an *extension of time* for the payment of those taxes. The mortgagee could proceed at any time after default in payment due him to foreclose on the mortgage. The decision in that case is not a precedent against what the court below decided in this case. There are dicta in that Puerto Rico Case about the power to revive lapsed liens even to the prejudice of a mortgagee, which dicta I think are unsound in reasoning and contrary to the weight of authority. It is flatly contradictory to the above quoted dictum of this court in *Scranton Lacka-*

*wanna Trust Co. v. Scranton Lackawanna Trust Co., Guardian* (supra).

I repeat that it is not necessary to decide whether the legislature could have passed an act in 1923 divesting a first lien, i. e., a first "estate in land" created under the laws existing in 1922, for the fact is it did not attempt in the Act of 1923 (supra) to do any such thing, as section 40 already quoted conclusively proves.

*Haspel v. O'Brien,* 218 Pa. 146, 67 A. 123, is cited by the majority opinion, but the only bearing that case has on the question now before us is to sustain the view herein expressed that taxes do not become liens against property *until the legislature so decrees.* Chief Justice MITCHELL in his opinion in that case points out that not until the passage of the Act of February 3, 1824, P. L. 18, were taxes "entitled to be first paid." That Act of 1824 was repealed by the Act of 1901.

The majority opinion cites the *City of Johnstown v. Dibert,* 88 Pa. Superior Ct. 117, which involved the question of whether or not a judicial sale of property upon a mortgage which had been recorded on February 8, 1904, divested the lien of an assessment of benefits and damages of abutting property in the City of Johnstown, the lien of which assessment was filed on January 31, 1920. It was held that it did not so discharge the claim. The Superior Court in its opinion said: "The Act of [May 28, 1915, P. L. 599] did not change the established law that a judicial sale divests all liens and turns them over to the proceeds, but qualified the rule only to this extent, that, so far as tax and municipal claims are not reached and paid in full, they shall continue to be a lien. This related only to the remedy for the collection of taxes and *municipal claims, which claims, under the pre-existing law, already had the right to priority of payment over the mortgage* [italics supplied]." The "pre-existing law" referred to was the Act of 1901, supra, which, as we have already pointed out, was repealed by section 32 of the Act of May 24, 1921, P. L. 1089, in

so far as the same applies to tax liens and tax claims. At the time the mortgage involved in the instant case was executed, the Act of 1901, which the Superior Court referred to in the City of Johnstown case, was no longer in force.

While the case of *Perry v. Brinton*, 13 Pa. 202, decided in 1850, does not rule the question now before us, this court used language in its opinion in that case which is applicable to the lien which appellant is here attempting to make paramount. There this court spoke of a lien "which can be ascertained and guarded against by the mortgagee" as opposed to a lien "which is to spring into existence in after years, and by retroaction, jostle the mortgage from its conceded place."

I find nothing in the Act of 1923 which indicates a legislative intent to "jostle" appellees' mortgage "from its conceded place," and I would affirm the judgment of the court below.