## Shisler's Estate

*Guy S. Claire*, for petitioners.

*Wallace M. Keely*, for borough tax collector.

*A. Clarence Emery* and *Ralph F. Wismer*, for Montgomery County.

DANNEHOWER, J., January 7, 1942.—This case comes before the court upon the petition of Vincent F. Shisler and wife, owners of real estate by purchase at a sheriff's sale, and the rule granted thereon, to show cause why the liens for 1935, 1936, and 1937 school, borough, and county taxes should not be stricken from the record.

The admitted facts are:

1. That on April 13, 1904, Alvin DeLong executed a mortgage in the sum of $2,500 to Maria Heil on seated land known as 82 Main Street, Borough of Pennsburg, Montgomery County, Pa. Said mortgage was duly recorded on May 2, 1904.

2. This mortgage was duly assigned, and after the death of Alvin DeLong foreclosure proceedings were instituted. Judgment on a sci. fa. sur mortgage was entered on May 21, 1940, for $3,034.21 and a writ of levari facias was issued.

3. These premises were sold at sheriff's sale on June 26, 1940, and petitioners, being the highest and best bidders, became the purchasers for the sum of $4,275 and received a sheriff's deed.

4. On December 20, 1939, prior to the sheriff's sale, the tax collector of the Borough of Pennsburg filed three separate liens against these premises for school, county, and borough taxes for the year 1935 in the sum of $91.04; for 1936 in the sum of $91.04; and for the year 1937 in the sum of $89.25, with interest and costs.

5. The proceeds realized from the sheriff's sale were sufficient to pay these liens, but they were not paid because there were other intervening liens. These claims for taxes still remain as liens against petitioners' real estate.

Therefore, petitioners, as owners of these premises by purchase at sheriff's sale, contend that the liens should be stricken from the record, as they were first liens of which the sheriff had notice and were discharged, and as the price the real estate brought was sufficient to pay them.

The taxing authorities contend that these liens should not be stricken from the record but should remain liens on the real estate sold because they were not first liens and were preceded by other intervening liens, and the Act of June 20, 1939, P. L. 498, sec. 2, designating them as first liens, is unconstitutional.

It was the duty of the tax collector to make a return to the county commissioners of taxes assessed and levied on seated lands not later than the first Monday of May in the year succeeding the year in which the respective taxes were assessed and levied. This he failed to do for the taxes assessed and levied for the years 1935, 1936, and 1937.

It was not until December 20, 1939, that liens for these taxes were filed under the authority contained in the Act of May 29, 1931, P. L. 280, sec. 1, as amended by the Act of June 20, 1939, P. L. 498, sec. 1, 72 PS §5971a, which provides:

"Where the receiver or collector of any such taxes shall have failed to make the return thereof as provided by this section, and the time fixed for making such return has expired, such receiver or collector of said taxes, or any delinquent tax collector, or taxing authority in whose hands such taxes now repose for collection is hereby authorized to make return of any of said taxes which are unpaid and for which no lien has been filed within six months from the effective date of this act; and the liens of any taxes so returned shall be valid and are hereby ratified and confirmed, and a county treasurer's sale may be had for such taxes at the time when a county treasurer's sale is held under the provisions of this act, in the same manner as if such returns had been made at the time heretofore required by this section: Provided, however, That the return of any tax under this amendment shall not establish, revive or reëstablish any tax lien against real estate which was transferred to any bona fide purchaser during the time before such return was made or when any such lien was lost."

There was no transfer to any bona fide purchaser during the time before such return was made or when any such lien was lost in the instant case. The only change of title was by virtue of the sheriff's sale.

Section 4, 72 PS §5971d, provides:

"All taxes unpaid and so returned and docketed, as aforesaid, shall be a first lien, subject as hereinafter stated, on said real estate liable for the payment thereof, together with all charges, interest, expenses and fees added thereto for failure to pay promptly; and such liens shall have priority to and be fully paid and satisfied out of the proceeds of any judicial sale of said property before any mortgage, obligation, claim, lien or estate with which said property may have or shall become charged or for which it may become liable, save and except only the costs of the sale and of the writ upon which it is made, and liens in favor of the Commonwealth of Pennsylvania, which shall have priority to such tax liens. All taxes returned under this or any previous statute supplied hereby shall be first liens until sold, as hereinafter provided, or unless sooner discharged."

According to the amendment of 1939, these taxes so returned were "first liens" and "have priority to and be fully paid and satisfied out of the proceeds of any judicial sale . . . before *any* mortgage, obligation, claim, lien or estate with which said property *may have* or shall became charged etc." The clear meaning of this language signifies that these claims for taxes should have been paid before the mortgages and judgments, provided the proceeds of the sale were sufficient, and in this case the proceeds were sufficient.

The Act of May 22, 1895, P. L. 111, secs. 1 and 2, 53 PS §2022(*a*) and (*b*), provides that the lien of all taxes levied or assessed against any real estate shall be divested by a judicial sale thereof, provided the amount of money realized shall equal the amount of the taxes; that it is the duty of any officer having taxes for collection against any land to be sold to give notice to the officer or persons selling such land of the amount of the taxes, and they shall be paid out of the proceeds arising from the sale after the payment of costs.

This statute was followed by the Act of May 16, 1923, P. L. 207, which provides that taxes shall be a first lien and have priority and be fully paid out of the proceeds of any judicial sale, and section 31, 53 PS §2051, which states that the lien of a tax shall not be divested by any judicial sale of property liened if the proceeds of such sale are insufficient to discharge it.

Therefore, since these taxes were levied and assessed and a return made thereto before the sheriff's sale, a first lien for taxes existed against the real estate at the time of the sheriff's sale and, the proceeds thereof being sufficient to pay them, the liens should be discharged by the sale.

But, it is contended that the provisions of the Act of 1939, declaring such liens to be first liens when filed, is unconstitutional, since it impairs the obligation of a contract and should be ineffective as to intervening purchasers and as to mortgage or lien holders, who gained priority because of the failure of the tax collector to return the tax at the regular time and also because such statutes should be interpreted so as to operate prospectively and not retrospectively.

We can in no better way rule on this contention than by calling attention to a discussion of this subject by Mr. Justice Linn in a recent opinion (one justice dissenting) which has attracted much attention in legal circles. The case is Erie v. Piece of Land, 339 Pa. 321, by which we are bound. We quote page 325:

"We are equally clear that even if the Acts of 1901 and 1915 had not been in effect when the mortgage was recorded, the city would be entitled to the benefit of the Act of 1923 and that no impairment of the contract between the mortgagor and the mortgagee would result from the discharge of the lien of the mortgage if the mortgagee elects not to pay the taxes. The purpose of such legislation is to enable the government to collect its tax. For as long as ten years, taxes have remained unpaid on this mortgaged property. The

double nature of a mortgage as an estate and as a security is familiar. By recording the mortgage, the mortgagee obtained a lien which had certain statutory preference. . . . That the mortgage was made and recorded before the act was passed, is no constitutional objection to the application of the Act of 1923. The statute applies to all mortgaged lands; the legislature had the power to tax the mortgagee's interest in the land. The procedure enables the mortgagee to have his day in court and protect his lien by paying the tax if he does not wish to lose the lien; he has the alternative; the statute provides: 'Any person interested may, at any time before the sale, pay the petitioner the whole of his claim, with interest and costs, whereupon the proceedings on petition shall at once determine.' There is no legal reason why the legislature should not require a mortgagee, who has had the protection of the government, to submit to the collection of the taxes out of the land against which they are assessed if his own debtor neglects to pay them. The procedure was prospective; that its application would operate on relations theretofore existing did not make the statute retroactive in any prohibited sense: compare *City of Johnstown v. Dibert*, 88 Pa. Superior Ct., 117, 120. The land had always been subject to taxation. If a mortgagee elects not to foreclose for default in payment of taxes on the land he holds as security, he does not, by his election, exempt his interest or estate in the land from taxation; no law gives him such right of exemption. When he secured his loan by taking the mortgage, he did so with knowledge that the land was, and would continue to be, taxed. He will not be heard to say that because he had a lien under the recording acts, the government must go without its taxes. All his relations growing out of his contract with his debtor were subject to the implied condition that the taxes must be paid out of the land.

There is therefore no impairment of his contract with the mortgagor."

Also, see cases cited in other jurisdictions.

In the light of this legislative enactment and the judicial declarations, we must decide that the amendment of 1939 is constitutional, and the tax liens for unpaid taxes for 1935, 1936, and 1937 are first liens and divested by a judicial sale of the property, since the claims were filed with the sheriff before the sale and the bid was sufficient to pay such liens.

And now, January 7, 1942, for the foregoing reasons, the rule to strike off these liens is hereby made absolute, and the liens are stricken from the record.