## Commonwealth v. My Pop's Root Beer Company, etc.

*Sidney Chait, Alexander N. Rubin, Goff and Rubin,* for Commonwealth.

*Thomas P. Mikell, Saul, Ewing, Remick & Saul,* for intervenor.

FLOOD, J., January 23, 1952.—On May 25, 1946, Dad's Root Beer Company (which later changed its name to My Pop's Root Beer Company) executed a mortgage to The Pennsylvania Company in the amount of $30,000 upon its buildings, machinery and equipment. The mortgage was recorded June 24, 1946. On June 1, 1947, the Act of May 14, 1947, P. L. 249, 72 PS §3405.1—3405.17, imposing a tax on soft drinks,

went into effect. On August 20, 1948, a tax claim in the sum of $102,575.32 was settled against the Root Beer Company for unpaid soft drink taxes bottled by the Root Beer Company during the period from June 1947 to July 1948. On August 12, 1948, the Commonwealth filed a certificate of lien against the Root Beer Company as of the above court, term and number and the mortgagee was granted leave to intervene. Subsequently, the Root Beer Company was adjudicated a bankrupt in Federal court and by agreement the sum of $28,000, sufficient to satisfy the claim of the mortgagee, was set aside to await the decision of this court on a case stated.

The question for decision is this: Can a general State tax lien priority act constitutionally defer the lien of a mortgage thereafter executed to the lien of the Commonwealth for unpaid taxes imposed upon the mortgagor and owner of the property by a taxing statute passed after the execution and recording of the mortgage?

The Act of March 30, 1811, P. L. 145, 5 Sm. L. 228, was the first act to give a tax lien to the State for accounts settled against delinquent taxpayers. By the Act of April 14, 1827, P. L. 471, 9 Sm. L. 433, the State was required to transmit copies of tax settlements to the prothonotaries of the respective counties in order to perfect its lien. The State, however, had no priority over mortgages and other liens until the Act of June 7, 1879, P. L. 112, and the priority of State claims was then limited to cases wherein the taxpayer was a corporation or a limited partnership. A later act enacted June 1, 1889, P. L. 420, extended this priority to taxes against most other business associations except general partnerships. State tax lien law was rounded into its present form by the Act of June 15, 1911, P. L. 955, 72 PS §3342. This act repealed the requirement of the Act of 1827 that the Auditor

General forward a copy of the lien certificate to the prothonotary of the county concerned, and also made the priority applicable to liens acquired under State taxes imposed by the legislature in the future as well as in the past. Section 1401 of The Fiscal Cole of April 9, 1929, P. L. 343, was a substantial reënactment of the Act of 1911, except that the scope of the State lien and priority was expanded to include individual delinquent taxpayers as well as delinquent business associations.

Section 1401 of The Fiscal Code of April 9, 1929, P. L. 343, which governs this case, as finally amended by section 4 of the Act of April 25, 1949, P. L. 745, 72 PS §1401, reads in part as follows:

*"All State taxes imposed under the authority of any law* of this Commonwealth, now existing or *that may hereafter be enacted,* and unpaid bonus, penalties, and all public accounts settled, . . . against any corporation, association, or person, including interest thereupon, *shall be a first lien* upon the franchises and property, both real and personal, of such corporation, association, or person, from the date of settlement, . . . and whenever the franchises or property of a corporation, association, or person, shall be sold at a judicial sale, *all taxes,* interest, bonus, penalties, and public accounts *due the Commonwealth shall first be allowed and paid* out of the proceeds of such sale *before any* judgment, *mortgage,* or any other claim or lien against such corporation, association, or person . . ."

The mortgagee argues that although the statute says *all* taxes shall be paid on judicial sale before *any* mortgage, this should not be literally interpreted since it results, in a case such as this, in great hardship for the mortgagee. Our attention is drawn to the Cigarette Tax Act of June 14, 1935, P. L. 341; the Malt Beverage Tax Act of April 5, 1933, P. L. 284, and the

Spiritous and Vinous Liquor Tax Act of December 5, 1933 (Spec. Sess.), P. L. 38, and it is argued that there was, in each instance, a specific exemption from section 1401 of The Fiscal Code by section 1207 of the code, evidently because of the hardship upon lienholders if the Act of 1929 were applied. From this it is argued that the court should construe a similar exception in the case of the soft drinks tax. This argument should have been presented to the legislature and must fall on deaf ears in a judicial proceeding. The legislature in another instance, the Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, as amended by the Act of April 23, 1942 (Spec. Sess.), P. L. 60, specifically limited the State's priority so as not to apply to "preëxisting duly recorded real estate mortgages". This is a definite indication that the legislature has assumed control of this area and will itself prescribe any limits which it desires to the application of section 1401 of The Fiscal Code.

Ths fact that the Soft Drink Tax Act, supra, provides for a prompt method of collecting the tax on a pay-as-you-go basis cannot be construed as a waiver of the State's priority under the general provisions of section 1401 of The Fiscal Code. The very purpose of passing this general provision was to avoid the necessity of providing a separate lien priority section in all tax statutes.

The mortgagee calls our attention to the fact that mortgages are legal investments in Pennsylvania by statute and argues that, therefore, the legislature desires that they be kept safe from impairment. Assuming that is so, it can only be said that the desire of the legislature for the safety of mortgages does not extend to their protection against the taxing power of the Commonwealth, as is shown by the express language of section 1401 of The Fiscal Code.

It is clear then that the tax statutes unequivocally give the State lien priority over mortgages under the circumstances of this case, and there is no basis upon which we can construe them otherwise. The only question remaining is whether or not the result achieved is so unfair as to be unconstitutional as an impairment of the mortgage contract. The multitude of cases cited by the Commonwealth approving priorities in many similar and analogous factual situations leave no doubt in our minds as to the constitutionality of the statute as we have construed it.

In Olyphant Borough, to use, v. Egreski, 29 Pa. Superior Ct. 116 (1905), a mortgage was executed by the debtor while an act giving priority to municipal liens was in force. The mortgagee argued that it was unconstitutional to prefer municipal claims even though he had full notice of the law when he gave the mortgage. The city's priority was sustained. In City of Johnstown v. Dibert, 88 Pa. Superior Ct. 117 (1926), the same situation was presented with the exception that this time the mortgage had been executed prior to the act giving the municipality its priority. But again the decision was that there was no unconstitutional impairment of the security of the mortgage. In Harper v. Consolidated Rubber Co., 284 Pa. 444 (1925), a purchase money mortgage was executed while the Act of 1911, supra, was in effect. A tax was then settled by the Commonwealth under an act in effect when the mortgage was executed. Mr. Chief Justice von Moschzisker upheld the priority of the Commonwealth over the vested mortgage interest as constitutional. This decision construed the predecessor to the present section 1401 of The Fiscal Code. The pertinent parts of that act are identical with the one governing this case.

A situation closer to ours was presented in Schoyer et al. v. Comet Oil & Refining Co., 284 Pa. 189 (1925).

In 1919 a mortgage was executed by the taxpayer. In 1921 the sale of gasoline was taxed for the first time. The taxpayer became delinquent, a judicial sale was held, and the Commonwealth was granted priority over the mortgage on the basis of the Act of 1911, supra. The Supreme Court held that the act was unconstitutional, but only because it discriminated against corporate taxpayers and did not apply to individual taxpayers. In dictum, the validity of the grant of priority to the State over a mortgage given when the tax was not yet in existence and not capable of being foreseen was sustained. The court said, at page 196:

"If this (distinction between corporations and individuals) is a proper classification. . . ., the lien must stand."

In Blue Bell National Bank v. Diller et ux., 53 D. & C. 445 (1945), a creditor obtained a lien by recording a judgment in 1942. At that time employer contributions to the Unemployment Compensation Fund were not considered State taxes so as to be within section 1401 of The Fiscal Code. After the creditor obtained his lien, however, the Act of April 23, 1942 (Spec. Sess.), P. L. 60, 43 PS §788.1 made such contributions the equivalent of State taxes and thus brought them within section 1401 of The Fiscal Code. The State's claim for contributions was held to have priority over the lien of the judgment creditor.

Although the facts in Erie v. Piece of Land, 339 Pa. 321 (1940), are different from those before us, that case does shed some light on the treatment of a mortgage interest by the courts when opposed by the imperious demand of the State for revenue. The court there held that the Act of May 16, 1923, P. L. 207, which gives cities the right to sell land free and clear of all liens under certain circumstances could be ap-

plied to mortgages created prior to the passage of that act.

The dictum of Mr. Justice Simpson in Scranton Lackawanna Trust Co., to use, v. Scranton Lackawanna Trust Co., Guardian et al., 310 Pa. 125 (1933), to the effect that section 1401 of The Fiscal Code could not be applied to mortgages which became vested prior to its enactment is of no assistance to the mortgagee here where the mortgage became vested after section 1401 of The Fiscal Code had been passed.

These cases indicate to us that the State's priority here is constitutionally valid.

The mortgagee presses an additional argument based upon the fact that its mortgage was a purchase-money mortgage. The facts in the case stated, to which we are confined in our decision, do not show that this mortgage was given for purchase money. But assuming that counsel's statement is true, as of course we do, Harper v. Consolidated Rubber Co., supra, has held that "any mortgage" as used in section 1401 of The Fiscal Code includes a purchase money mortgage. We do not see that the constitutional question is at all different in the case of a purchase-money mortgage.

The mortgagee also argues that "property" in section 1401 of The Fiscal Code means only the equity of redemption. An equity of redemption in modern Pennsylvania law means only the value of a property to the mortgagor with the amount of the mortgage lien deducted. To hold that the State lien is only upon the equity of redemption, would render meaningless the provision of the code that the State lien shall be paid before "any mortgage". The two ideas are mutually destructive. Harper v. Consolidated Co., supra, also considered and rejected this argument and expressly disagreed with Sweeney v. Arrowsmith, 43

Pa. Superior Ct. 268 (1910), wherein the argument had prevailed. The Scranton Lackawanna Trust Co. v. Scranton Lackawanna Trust Co., Guardian, supra, wherein the State inheritance tax was held to be levied only upon the equity of redemption is no precedent here. In that statute the definition of "property" as that which passed to the survivor clearly lends itself to such an interpretation.

### Conclusion

Section 1401 of The Fiscal Code in clear and comprehensive language grants the State a priority over mortgage liens for the taxes involved in this case. In view of the cases we have discussed it appears that that priority is constitutional as applied in this case. The Commonwealth's priority over the claim of the intervening mortgagee must be sustained.

### Order

Judgment is entered for the Commonwealth of Pennsylvania in the sum of $28,000.