# Bryan's Appeal.

101   389
187   165

101   389
29 SC  255

1. A testamentary charge on real estate situate in the city of Pittsburgh, will be discharged by a judicial sale of the premises under a subsequent municipal lien.

2. A. by her will devised certain real estate in the city of Pittsburgh, to her married daughter B., for life, with remainder to B.'s children, charging said property with the support of an imbecile son. B., and her husband C., procured the sale of the premises on a municipal lien for grading the street upon which it abutted, in order to divest the charge thereon; and the purchaser soon afterwards conveyed it to C., who, with his wife, executed a mortgage thereon to D. D. subsequently foreclosed the mortgage and bought in the property. The administrator c. t. a. of A.'s estate, who had been supporting the imbecile son, filed a petition in the Orphans' Court to enforce the charge, by a sale of the property to reimburse him for said support. *Held,* that the charge on the land was divested by the sheriff's sale; and that the record was not notice to D. of C.'s fraudulent intention in procuring said sale. *Held,* therefore, that the petition should be dismissed.

3. Wistar *v.* City of Philadelphia, 5 Norris 215, distinguished.

[Bryan's Appeal.]

October 24th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and GREEN, JJ. STERRETT, J., absent.

APPEAL from the Orphans' Court of *Allegheny county:* Of October Term 1882, No. 146.

Appeal of George S. Bryan from a decree of said court, sustaining the petition of an administrator d. b. n. c. t. a., for the sale of certain real estate to pay for the maintenance of one Frederick Bentz, whose support was made a charge on said real estate, by the will of Mary B. Garber, the former owner.

By her will, which was proved May 22d 1867, the testatrix devised three lots of ground in the city of Pittsburgh, to her daughter Mary E. Bostwick, for life, with remainder to her children, and charged the land with the support and maintenance of Frederick Bentz, an imbecile son of testatrix; "if by reason of sickness, bodily or mental infirmity, he shall at any time be unable to work."

On March 22d 1875 the city of Pittsburgh filed a lien against this real estate, and Edmond Bostwick, the husband of the devisee, as owner, who with his wife resided on the premises, for $203.16, the amount assessed under the Act of January 6th 1864 (Pamph. L. 1135) for grading Bates alley, upon which the property abutted. The grading was finished September 29th 1874, and on July 11th 1875, more than six months after the completion of this work, the record was amended, under § 20 of said Act, by making "unknown owners" parties defendants; but no entry of the amendment and of the addition of unknown owners as parties defendant was made in the index, as required by the Act. Judgment was then taken against the unknown owners, and the premises sold, October 8th 1875, on a levari facias issuing thereon, to Jacob W. Zahniser for $1,100. On the twenty-fifth of the same month, Zahniser conveyed a portion of the property to Edmond Bostwick, who executed a mortgage, November 19th, on this portion, in which his wife Mary E. Bostwick, the devisee, joined, in favor of I. M. Pennock to secure the payment of $7,000. This mortgage was afterwards assigned, for valuable consideration, to George S. Bryan, who foreclosed it in September 1877 and bought in the property.

It appeared from the testimony that Mary E. Bostwick and her husband had procured the sale of the property under the municipal lien, for the purpose of acquiring the title free from the charge thereof, and of borrowing money on the premises.

John Skillen, administrator d. b. n. c. t. a. of Mary B. Garber, with whom Frederick Bentz had been living for a number of years, filed a petition in the Orphan's Court to December Term 1880, alleging that Bentz had been unable to support himself both by reason of mental and bodily infirmities,

that there was due to the petitioner under the will for Bentz's support $1,650, and praying for an order for the sale of the property in question for the payment of said sum in order to provide for Bentz's future support.

In answer to this petition Bryan claimed that the charge on the land, under the will, for Bentz's support, was divested by the sale on the municipal lien, and the court at first entered a decree dismissing the petition.

To this decree the petitioner excepted on the following grounds : (1) That more than six months had elapsed between the completion of the work on the alley and the time when the lien was filed as against the unknown owners. (2) That the service of the writ was irregular. (3) That the amendment of the record on July 17th 1875, by making *unknown owners* parties defendant, was unauthorized by § 20 of the Act of January 6th 1864. (4) That the lien was not indexed, as required by the Act. (5) That Bryan was not an innocent purchaser, without notice of Bostwick's fraud in procuring the sale ; and finally, that the sale on the municipal lien did not divest the charge on the land under the will.

In an opinion filed on these exceptions, the court, while holding that the sale on the municipal lien did, *in law*, divest the charge on the land, held further, that from the record Bryant was affected with notice of the fraudulent character of the sale, and therefore took the land subject to the charge. The court therefore entered a final decree, vacating its former one, and in accordance with these rulings, whereupon Bryan took this appeal, assigning for error the decree of the court.

*George Shiras, Jr.* (with him *C. C. Dickey*), for appellant.— The court below ruled that there was a resulting trust in Bostwick, on the ground of an alleged fraud by him ; and further, that the appellant had constructive notice of this fraud. But Bryan was not a party to the sale on the municipal lien nor had he notice of any fraud. The record simply showed : (1) The devise of the land to Mary E. Bostwick, the remainders and the charge. (2) The municipal lien, the judgment and execution, and the sheriff's deed to Zahniser. (3) The conveyance from Zahniser to Bostwick. It was not alleged that Bryan knew of the existence of Frederick Bentz, nor was there any allegation or proof that he knew Bostwick was the husband of the devisee under the will. The circumstances were not such as to make it incumbent upon Bryan to inquire into these facts: Barlow *v.* Beall, 8 Harris 178 ; Fillman *v.* Divers, 7 Casey 429 ; Kistler's Appeal, 23 Sm. 293. He took a title derived from a judicial sale. If the law be as determined by the court below, then no purchaser upon a municipal lien can be safe, nor can the most

searching examination of title assure a bona fide purchaser, who has paid a full price for his land, that a court may not take it from him to enforce a secret trust, nor can the city of Pittsburgh collect the cost of its improvements.

*Barton & Son*, for appellee.—The judicial sale, even if regular, did not divest the charge on the land, because the charge was uncertain and contingent: Cadman *v.* Jackson, 2 Sm. 295; Hiester *v.* Green, 12 Wr. 96; Helford *v.* Wilson, 12 Sm. 385. But the sale was not regular. The statutory time for filing the lien was within six months from the completion of the work, and the amendment making unknown owners parties defendant was not filed until ten months afterwards. Again, § 20 of the Act of January 6th 1864, refers only to the adding and striking out of known parties, such as are described in § 16; and under § 21 the omission to index the lien under the title " unknown owners," was fatal. Bryan had notice of record, by the will, that the tenant for life was the wife of Edmond Bostwick. By going to the premises he could have ascertained that she and her husband were in possession, at the time the grading was done, and that her husband had made the improvements to pay for which the money was borrowed from Bryan. The record also showed the irregularities in filing the lien. Bostwick had no title which he could hold against the charge under the will; and Bryan, having constructive notice of Bostwick's fraud, had no better title in this respect.

Mr. Justice PAXSON delivered the opinion of the court, November 20th 1882.

We are of opinion that the learned judge of the Orphans' Court was correct in holding that the charge upon the real estate in controversy for the support of Frederick Bentz was discharged by the judicial sale. It was in the nature of a fixed lien, and may be said to come within the exceptions pointed out in Hiester *v.* Green, 12 Wright 96, and as such binding between parties and privies. The property, however, was sold upon a municipal claim filed by the city of Pittsburgh for grading and paving a street abutting thereon. The Act of May 16th 1857, section 4, P. L. 542, provides that " all taxes, rates and levies which may hereafter be lawfully imposed or assessed by authority of said city (Pittsburgh) on any real estate therein, shall be and they are hereby declared to be a lien thereon, . . . . . and that the said lien shall have priority to, and shall be fully paid and satisfied before any recognizance, mortgage, judgment, debt, obligation or responsibility, which the said real estate may become charged with, or liable to, from and after the passing of this Act." The proceeding under this Act is *in rem*, and the

whole estate in the land is charged: Salter *v.* Reed, 3 Harris 260. The reason for it is that the improvements are for the benefit of the property. Section 16 of the Act of 6th January 1864, P. L. 1135, under which Bates alley was graded and paved, provides that the term " owner " as used in said Act shall be construed to mean all individuals having any title or interest in the properties assessed. It was held in Perry *v.* Brinton, 1 Harris 202, that a sale on a municipal lien did not divest the lien of a prior mortgage. That, however, was because mortgages in the city of Philadelphia were protected by an Act of Assembly. It has never been held that charges upon or estates in land created by the owner thereof can avail as against the taxing power of the Commonwealth. Municipal liens for grading and paving streets are a species of taxation and come within the rule. Such liens bind the entire estate in the land, except where an Act of Assembly directs otherwise. If it were not so, the owner of real estate could wholly defeat the taxing power by charging it with the payment of a sum of money equal to its full value.

That the sheriff's sale in this instance discharged the premises in question from the charge in Mrs. Garber's will in favor of Frederick Bentz is settled by Allegheny City's Appeal, 5 Wright 60, and Pittsburgh's Appeal, 20 P. F. S. 142. It is equally clear that under Delaney *v.* Gault, 6 Casey 63, and Emerich *v.* Dicken, the irregularities complained of were cured by the judgment and do not affect the purchaser at a judicial sale. Wistar *v.* City of Philadelphia, 5 Norris 215, is not in conflict with this view, for the reason that there the defence was made by the owner prior to any sheriff's sale of the premises.

Up to this point we are in harmony with the rulings of the court below. The learned judge held, however, that the appellant was affected with notice of the alleged fraud of Mary E. Bostwick, and her husband. It is found by the court, and for the purposes of this case we assume the fact to be, that they procured the sheriff's sale of the premises for the purpose of getting it back discharged from the provision in Mrs. Carter's will in favor of Frederick Bentz. The appellant is a purchaser for value, and before his title can be affected by the fraud of the Bostwicks, it must appear that he either was a party to the fraud or had knowledge of it. There is no pretence that he was a party or had actual knowledge of any fraud. But the learned judge held that he had constructive notice, as it appeared of record in his line of title. This was error. The appellant's title was acquired through a judicial sale, upon a valid lien. It is true the charge in favor of Frederick Bentz appeared in the line of title, but the fraud by which the Bostwicks procured the sale did not appear. The fact that they resided upon the premises had no especial significance. If sufficient to put appellant

upon inquiry, he can only be charged with what he would probably have ascertained if he had made such inquiry. It is too much to assume that either Bostwick or his wife would have informed him of the fraud. He would only have learned what the record discloses, that the property had been sold at a judicial sale upon an adverse proceeding. Nothing appeared upon record to indicate that the Bostwicks were practically both vendors and vendees. The tendency of judicial decision is to protect good faith purchasers at judicial sales, and where participation in or knowledge of actual fraud is not alleged, we are not disposed to extend the doctrine of constructive notice to unreasonable lengths. Where the record discloses such facts as fairly put a purchaser upon inquiry, the rule is to hold him to notice of what such inquiry would reasonably have developed. To extend it further is not warranted by the authorities, and might work serious wrong in many instances.

The decree is reversed and the petition dismissed at the costs of the appellee.