## Blue Ball National Bank v. Diller et ux.

*Amos E. Burkholder* and *Charles W. Eaby,* for exceptant.

*James H. Duff,* Attorney General; *David R. Perry,* Special Deputy Attorney General, and *John F. Finney,* contra.

WISSLER, J., April 6, 1945.—On December 15, 1944, plaintiff caused a writ of fieri facias to be issued on a

judgment entered September 4, 1942, to August term, 1942, no. 149, originally entered September 8, 1937, to August term, 1937, no. 206, by virtue of which certain personal property and real estate of defendants were sold by the sheriff on January 11 and 12, 1945, respectively. The amount of the sale of the personal property was $575 and of the real estate, $2,500, or a total of $3,075.

The Commonwealth of Pennsylvania, on December 22, 1944, filed in the prothonotary's office a lien, no. 374, docket 44, in the sum of $746.23, representing delinquent principal contributions in the sum of $519.31 for all quarters of 1939, the fourth quarter of 1940, the third and fourth quarters of 1943, and all quarters of 1944, and delinquent interest in the sum of $226.92. The sheriff filed his schedule of distribution applying the proceeds of the sale as follows: "Proceeds of sale, $3,075; deduct costs, $1,230.68; balance, $1,844.32. Distribution as follows: East Earl Township tax claims, $54.04; Caernarvon Township tax claims, $17.52; Caernarvon Township tax lien, M. L. D. 28, p. 242, $21.77; Salisbury Township tax claims, $5.57; Commonwealth of Pennsylvania, M. L. D. 44, p. 374, $756.49; United States Internal Revenue (FUT-FIC-WH. tax), $547.43; Blue Ball National Bank, August term, 1942, no. 149, $441.50."

Exceptions were filed to the sheriff's schedule of distribution by the Blue Ball National Bank as to that portion of the schedule awarding to the Commonwealth its lien for $756.49, M. L. D. 44, p. 374, to United States Internal Revenue (FUT-FIC-WH. tax) $547.43, and to the amount of $441.50 awarded to the Blue Ball National Bank on its judgment entered to August term, 1942, no. 149. The United States Government, by its counsel, having withdrawn its claim of priority and the proceeds of the sale being less than the amount of the judgment upon which the execution was issued, the only remaining question is with regard to the right of

the Commonwealth of Pennsylvania for priority for unemployment contributions in the distribution of the proceeds realized from a sheriff's sale of personal and real property on an execution issued upon a prior judgment of record, where the Commonwealth has filed a lien of record in the prothonotary's office pursuant to section 308.1 of the Pennsylvania Unemployment Compensation Act of December 5, 1936, P. L. (1937) 2897, as amended by the Act of April 23, sp. sess. 1942, P. L. 60, prior to the date of sale.

That the State of Pennsylvania has a sovereign right over all creditors in the collection of accounts due it, if it desires to exercise that right, is clearly established in the case of South Philadelphia State Bank's Insolvency, 295 Pa. 433 (1929). Has the Commonwealth then exercised that right by the statutes under which it makes its claim for priority in the instant case?

The original Unemployment Compensation Act approved December 5, 1936, P. L. (1937) 2897, made no provision as to creating a lien for contributions required of an employer. However, as amended by the Act of April 23, sp. sess. 1942, P. L. 60, 43 PS Pocket Parts §788.1, sec. 308.1 provides as follows:

"All contributions and the interest and penalties thereon due and payable by an employer under the provisions of this act shall be a lien upon the franchises and property, both real and personal, of the employer liable therefor, from the date a lien for such contributions, interest and penalties is entered of record in the manner hereinafter provided. Whenever the franchises or property of an employer is sold at a judicial sale, all contributions and the interest and penalties thereon thus entered of record shall first be allowed and paid out of the proceeds of such sale in the same manner and to the same extent that State taxes are paid . . ."

Section 1401 of The Fiscal Code of April 9, 1929, P. L. 343, as amended June 3, 1933, P. L. 1474; June 11, 1935, P. L. 303, and May 28, 1943, P. L. 794, 72 PS Pocket Parts §1401, provides as follows:

"All State taxes imposed under the authority of any law of this Commonwealth, now existing or that may hereafter be enacted, and unpaid bonus, penalties, and all public accounts settled against any corporation, association, or person, including interest thereupon, shall be a first lien upon the franchises and property, both real and personal, of such corporation, association, or person, from the date of settlement and whenever the franchises or property of a corporation, association, or person shall be sold at a judicial sale, all taxes, interest, bonus, penalties, and public accounts due the Commonwealth shall first be allowed and paid out of the proceeds of such sale before any judgment, mortgage, or any other claim or lien against such corporation, association, or person . . ."

It is contended by exceptant that since the Act of 1942, creating the lien for unemployment contributions, was passed subsequent to the time when its judgment lien was already established, the judgment lien should have priority over the Commonwealth's claim in the sheriff's schedule of distribution. On the other hand, the Commonwealth contends that it has a lien from the date of the entry of the lien for the unemployment contributions that were due, and by the Unemployment Compensation Act it is given a priority over all liens except a preëxisting duly recorded real estate mortgage.

This brings us to a construction of the legislation providing for the collection and payment of unemployment contributions. It would seem clear that the legislature, by the Act of 1942, established a lien status for unpaid contributions, interest, and penalties when it provided:

"All contributions and the interest and penalties thereon due and payable by an employer under the provisions of this act shall be a lien upon the franchises and property, both real and personal, of the employer liable therefor, from the date a lien for such contribu-

tions, interest and penalties is entered of record . . .",
and established a priority status above all liens except
a duly recorded real estate mortgage when it provided:

"Whenever the franchises or property of an em-
ployer is sold at a judicial sale, all contributions and
the interest and penalties thereon thus entered of rec-
ord shall first be allowed and paid out of the proceeds
of such sale in the same manner and to the same extent
that State taxes are paid: . . ."

Again, by this act contributions are designated as
State taxes and as such the lien for same having been
filed before the sale, its status is fixed as of the date of
sale, for, as was said by Judge Keller in the case of
Keystone State B. & L. Assn. v. Sabo et al., 140 Pa.
Superior Ct. 599 (1940), at page 601:

"Following a sheriff's sale of real estate, tax claims
against the real estate are to be paid out of the *fund*
realized from the sale, and their status is fixed as of
the date of the sale."

Exceptant relies on Scranton Lackawanna Trust
Co., to use, v. Scranton Lackawanna Trust Co., Guard-
ian, et al., 310 Pa. 125 (1933), deciding that a prior
recorded mortgage was entitled to priority over the
Commonwealth's claim for collateral inheritance tax
in the proceeds of a sheriff's sale. This case, however,
is distinguishable, as the Commonwealth's claim was
not on the land as such but on the mortgagor's equity
of redemption only. The collateral inheritance tax was
only an assessment of decedent's interest after deduct-
ing the debts, including the full amount of the mort-
gage.

In Erie v. Piece of Land, 339 Pa. 321 (1940), the
City of Erie petitioned the court, under the Act of May
16, 1923, P. L. 207, 53 PS §2051, for an order on the
sheriff to sell on its judgment for city taxes certain real
estate clear of liens. The mortgagee of the land con-
tended that as the statute was passed subsequent to the
recording of his mortgage, it was unconstitutional as
impairing the obligation of contracts when applied

retroactively to divest his lien. The court held, however, that the statute was not invalid since the mortgagee's contract with his debtor was subject to the implied condition that the land would continue to be taxed and that such taxes must be paid out of the land, citing Bryan's Appeal, 101 Pa. 389, 393, in which Judge Paxson said:

"It has never been held that charges upon or estates in land created by the owner thereof can avail as against the taxing power of the Commonwealth. . . . If it were not so, the owner of real estate could wholly defeat the taxing power by charging it with the payment of a sum of money equal to its full value."

This reasoning of the court is supported by the great weight of authorities which base their decisions not only on the concept of the sovereignty of the State as regards taxation, but also on the theory that the owner of the fee holds his title subject to the paramount right of the public and the lienor takes his security with notice of that paramount right.

Apart from this general principle of law, it is evident that the legislature from the specific provision of section 308.1: "That the lien hereby created shall not be prior to preëxisting duly recorded real estate mortgages . . .", intended its lien to be prior to all other liens such as this judgment of claimant.

Even though claimant had a valid judgment lien prior to the passage of the Act of 1942 making the claim of the Commonwealth a lien, the Act of 1942 clearly defines contributions as a State tax when it provides: "All contributions and the interest and penalties . . . shall first be allowed and paid out of the proceeds of such sale in the same manner and to the same extent that State taxes are paid . . ."; and they would, therefore, clearly be included under the provisions of section 1401 of the Fiscal Code of April 9, 1929, P. L. 343, passed prior to the entry of claimant's judgment whereby all State taxes imposed under the authority of any law now existing or that may hereafter be enacted are given priority over all other liens.

And now, April 6, 1945, exception no. 1 filed by the Blue Ball National Bank to the schedule of distribution of the sheriff is dismissed, exception no. 2 is sustained, and the exception to the amount of the award to the Blue Ball National Bank is sustained, and it is ordered that the schedule of distribution be amended as to the last two items thereof by omitting the award to the United States Revenue in amount of $547.43, and awarding that amount, in addition to the amount already awarded, to the Blue Ball National Bank, making the total award to the Blue Ball National Bank $988.93, and distribution made in accordance therewith.