## Cambria County Commissioners' Petition

Before McCann, P. J., McKenrick and Griffith, JJ.

*George M. Spence* and *David C. Wolfe*, for petitioners.

*Llewellyn E. Lloyd*, for respondent.

GRIFFITH, J., May 5, 1947.—Under the provisions of section 17 of the Act of May 29, 1931, P. L. 280, as last amended by the Act of May 24, 1945, P. L. 945, 72 PS §5971q, the commissioners of Cambria County filed their petition asking that this court grant a rule to show cause why a decree should not be made that certain real estate situate in the seventh ward of the City of Johnstown, assessed in the name of Emmerling Products Company, should not be sold free and clear of mortgages, municipal claims and ground rents.

The petition sets forth that the land described in the petition was sold to the county commissioners on October 13, 1930, at a sale held by the county treasurer for unpaid taxes; that the right of redemption expired on October 13, 1932, and that said right has not been exercised by the owner or any lien creditor; that the commissioners fixed an upset price of $73,751.85, sufficient to pay all costs, taxes and municipal claims, etc., against the property, in accordance with the Act of 1931, as amended, supra, and exposed the property to public sale on October 7, 1946, and received no bids sufficient to pay said upset price. The names of the record owner, lien creditors and municipal claimants are set forth in the petition, as well as an abstract of title showing the state of the record. The abstract shows title in the name of "Emmerling Products Company", a first mortgage in favor of Philopena Emmerling, dated January 14, 1918, and recorded January 18, 1918, in Mortgage Book, volume 86, page 312, in the sum of $123,764.17; a second mortgage in favor of the Johnstown Trust Company, trustee, dated December 1, 1919, and recorded December 16, 1919, in Mortgage Book, volume 109, page 9; and an instrument dated January 24, 1924, recorded March 26, 1924, whereby it is agreed that the lien of the first mortgage shall be postponed to the lien of the second mortgage, except in the sum of $10,000, for which amount the

first mortgage retains its first lien. The first mortgage was assigned to the Johnstown Trust Company, then to the Title, Trust and Guarantee Company of Johnstown, and was finally sold as a part of the remaining assets of the Title, Trust and Guarantee Company to A. E. Corn. The second mortgage was assigned to H. W. Berkey as trustee for bondholders. A large amount of taxes have accrued against this property, the city taxes have been unpaid since 1924, the county taxes since 1927, and the school taxes since 1924.

Upon the presentation of the petition, a rule was granted, returnable February 3, 1947, directing Emmerling Products Company, the owner, and A. E. Corn and H. W. Berkey, trustee, mortgagees, to show cause why a decree should not be entered authorizing petitioners as the Commissioners of Cambria County to sell the property described in the petition at public sale, without further advertisement, free and clear of all mortgages, municipal claims, ground rents and other encumbrances.

No answer was filed by the owner, nor by the second mortgagee, but A. E. Corn, the first mortgagee, filed an answer to the rule, wherein he averred that the Act of 1931, supra, "cannot be constitutionally invoked to divest the lien of defendant's mortgage for, to do so, would impair the mortgagee's contract with the mortgagor and would result in the retroactive application of said acts of assembly".

Respondent concedes that in the case of Erie v. Piece of Land, 339 Pa. 321, the Supreme Court upheld the constitutionality of a similar sale procedure provided by the Municipal Lien Act of May 16, 1923, P. L. 207, 53 PS §2051; but attempts to distinguish the rule laid down in that case, and contends that such rule is not applicable to the procedure provided for by the Act of 1931, supra.

We are of the opinion that the rule in the Erie case is applicable to the procedure provided for by the Act of 1931. Respondent's contention is that the Act of 1923 gave an opportunity to any person interested to pay the taxes, interest and costs at any time before the sale, and that the Act of 1931 provides no such opportunity for a lien creditor. It is true that the opinion of the Supreme Court in the Erie case referred to this provision in the act of 1923. However, we are not convinced that the sine qua non of the rule in the Erie case was the provision contained in the Act of 1923 that a lien creditor, inter alia, could pay the taxes, interest and costs at any time before the sale. Though that provision in the act was referred to in the opinion, as we view it, the basis of the decision was not the fact that a lien creditor might at any time before the sale pay the taxes, interest and costs, but rather that the legislature had the right to provide that the claims of the Commonwealth and its political subdivisions should be prior to the lien of a mortgage. The court said (p. 326) :

"There is no legal reason why the legislature should not require a mortgagee, who has had the protection of the government, to submit to the collection of the taxes out of the land against which they are assessed if his own debtor neglects to pay them. The procedure was prospective; that its application would operate on relations theretofore existing did not make the statute retroactive in any prohibited sense: compare City of Johnstown v. Dibert, 88 Pa. Superior Ct. 117, 120. The land had always been subject to taxation. If a mortgagee elects not to foreclose for default in payment of taxes on the land he holds as security, he does not, by his election, exempt his interest or estate in the land from taxation; no law gives him such right of exemption. When he secured his loan by taking the mortgage, he did so with knowledge that the land was,

and would continue to be, taxed. He will not be heard to say that because he had a lien under the recording acts, the government must go without its taxes. All his relations growing out of his contract with his debtor were subject to the implied condition that the taxes must be paid out of the land. There is therefore no impairment of his contract with the mortgagor. . . . In Bryan's Appeal, 101 Pa. 389, 393, Paxson, J., said: 'It has never been held that charges upon or estate in land created by the owner thereof can avail as against the taxing power of the Commonwealth. Municipal liens for grading and paving streets are a species of taxation and come within the rule. Such liens bind the entire estate in the land, except where an Act of Assembly directs otherwise. If it were not so, the owner of real estate could wholly defeat the taxing power by charging it with the payment of a sum of money equal to its full value.' "

Respondent refers to the case of Beaver County B. & L. Assn. v. Winowich et ux., 323 Pa. 483, in which case the earlier Deficiency Judgments Act of January 17, 1934, P. L. 243, was held to be unconstitutional. In that case, the court said that while the legislature has the power to alter and suspend modes of procedure, even as to preëxisting contracts, yet "Any change in procedure which does not supply an alternative remedy, equally adequate and efficacious, in place of that which existed when the contract was made, is violative of the constitutional prohibition."

It will be noted that the constitutionality of the later Deficiency Judgments Act was upheld in the case of Fidelity-Philadelphia Trust Company v. Allen et al., 343 Pa. 428, and The Pennsylvania Company, etc., v. Scott, 346 Pa. 13. Moreover, the alternative remedy, whose adequacy the court was considering in the Beaver County B. & L. Assn. case, was the remedy of a mortgagee against a mortgagor. In the present

case, we are considering the remedy of a political subdivision of the Commonwealth in enforcing its lien for taxes.

We believe, however, that respondent had a remedy under the procedure provided in the Act of 1931 as adequate and efficacious as that provided in the Act of 1923. At any time before the sale for delinquent taxes, respondent, or his assignor, might have paid the taxes, added them to the mortgage debt, and foreclosed upon the real estate; in which case, he would now hold legal title and could protect his interest as the owner.

Also, respondent, as a lien creditor, had the right to redeem under the Act of 1931, sec. 9, as last amended by the Act of June 20, 1939, P. L. 498, sec. 5; 72 PS §5971i. The period during which he had such right of redemption was extended by the Act of July 28, 1941, P. L. 535, 72 PS §6105.1, so that both owners and lien creditors have an absolute right of redemption so long as the title remains in the county: Roth Appeal, 159 Pa. Superior Ct. 145; Redemption of Faust Land, 52 D. & C. 70.

Moreover, respondent may appear at the public sale in the event the rule is made absolute, and present his bid. If he believes the market value of the real estate exceeds the unpaid taxes, together with interest and costs, he may bid more that that amount, and will be entitled to the first share, after the payment of taxes, interest and costs, to the extent of his first lien now in the sum of $10,000, since he is the senior lien creditor. If the market value of the property is less than the unpaid taxes, interest and costs, he may by his bid acquire the property for an amount less than said taxes, interest and costs.

Respondent suggests that these remedies are not practically available to him because there is a second mortgage on the property, and that if he were to pay the taxes, interest and costs and accept a deed from

the county commissioners, he would in turn have to pay off the second mortgage, because his first mortgage would merge with the title. This contention is incorrect, for where it is against the interest of the mortgagee, the merger will not take place.

In Naffah v. City Deposit Bank et al., 343 Pa. 348, 352, the court said:

"Merger is a question of intention, and, where the mortgagee's intention is not to merge, the mortgage will be kept alive, nor will a merger be presumed to take place when, as obviously here, it would be against the interest of the mortgagee": See also Sheehan B. & L. Assn. v. Scanlon, 310 Pa. 6, and Moats v. Thompson et al., 283 Pa. 313.

Obviously, it would be to the advantage of respondent to keep his present mortgage alive as against the lien of the second mortgage. Consequently, a deed to him from the county commissioners would not result in a merger, and he could evidence his intention of continuing the lien by promptly issuing a foreclosure proceeding to divest the lien of the second mortgage.

We find nothing in the procedure provided by the Act of 1931, supra, which impaired the contract between respondent or his assignor and the mortgagor. Accordingly, we believe petitioners are entitled to proceed to a public sale of the real estate described in the petition, free and clear of "all tax and municipal claims, liens, mortgages, charges and estates of whatsoever kind." We, therefore, enter the following

### Final decree

And now, May 5, 1947, the hearing on the above matter having been held, after argument and upon due consideration, and the court being satisfied that service has been made of the rule granted in these proceedings upon the parties respondent in the manner provided for the service of writs of scire facias to

obtain judgments upon tax and municipal claims, and that the facts stated in the petition are true, it is ordered and decreed that the rule heretofore granted is made absolute, and that the real estate as described in said petition be sold on the fourth Monday of May 1947 at 10 o'clock a.m., without further advertisement, clear of all mortgages, municipal claims and ground rents and other encumbrances not divested by county treasurer's sale, to the highest bidder at such sale, and that the proceeds realized therefrom shall be distributed to payment in the following manner: First, fees and costs of sale; second, the tax liens of the Commonwealth; third, all moneys expended by the county in the demolition, removal or repair of any building or structure on such property after the same had been deemed unsafe by the political subdivision in which the same is located; fourth, all moneys expended by the county on order of the Pennsylvania State police in removing or remedying any condition on such property that is found to be a fire menace or hazard; fifth, taxes due the various taxing districts in proportion to their respective interests; sixth, municipal claims due on such property; and seventh, mortgages and other liens in the order of their priority.

It is further ordered and decreed that the purchaser at such sale, or any owner who redeems in accordance with the act of assembly in such case made and provided, shall take and forever thereafter have an absolute title to the property described in the foregoing petition free and discharged of all tax and municipal claims, liens, mortgages, charges and estates of whatsoever kind. And the commissioners of the County of Cambria are directed to make and deliver a deed, properly executed and acknowledged, to the purchaser of said real estate.

NOTE.—An appeal taken from the foregoing decree has been discontinued.