## Bridgeport National Bank v. McCausland Motors, Inc.

Before Gawthrop, P. J., Lichtenfeld and Harvey, JJ.

*Gawthrop & Greenwood,* for Bridgeport National Bank.

*D. Clarke Sautter,* for Farmers & Mechanics National Bank of Phoenixville.

*Fred W. Deininger,* for the Borough of Phoenixville.

*Trieste Capriotti,* for Pennsylvania Unemployment Compensation Fund.

*Dallett Hemphill,* for the Bureau of Sales and Use Tax.

*Guy W. Knauer,* for the Sheriff of Chester County.

*MacElree, Platt & Marrone* for Title Insurance Corporation of Pennsylvania.

HARVEY, J., July 21, 1961.—This matter is before the court on exceptions to the sheriff's schedule of distribution of the proceeds from the sale of real estate owned by defendant, McCausland Motors, Inc., herein called "McCausland." Exceptant is Farmers and Mechanics National Bank of Phoenixville, a judgment creditor of McCausland.

Execution proceedings were instituted to the above term and number by the Bridgeport National Bank on

judgment entered in favor of the bank against McCausland in an action of mortgage foreclosure, the mortgage having been recorded in the office of the recorder of deeds in and for this county on November 5, 1956, in mortgage book S-21, vol. 517, p. 418, covering two certain lots or parcels of ground with improvements thereon erected, situate in Schuylkill Township, this county. A writ of levari facias was issued, a levy made on the real estate described in the mortgage, and sheriff's sale held on September 30, 1960. The real estate was sold to exceptant for $44,000. Distribution of this fund is now in question.

As required by Pa. R. C. P. 3136, the sheriff filed a proposed schedule of distribution, as follows:

| | |
|---|---:|
| Sheriff's costs | $435.29 |
| Transfer tax on deeds due the Commonwealth | 440.00 |
| Transfer tax on deeds due the T o w n s h i p of Schuylkill and/or the School District of Schuylkill Township | 440.00 |
| Commonwealth, Department of Revenue, Bureau of Sales and Use Tax v. McCausland Motors, Inc. | 9,358.04 |
| Commonwealth, Department of Labor and Industry, to the use of the Unemployment Compensation Fund, v. McCausland Motors, Inc. | 151.25 |
| United States of America v. McCausland Motors, Inc. entered August 17, 1960, in Docket 1 as No. 2068 | 543.50 |
| Corporation taxes due the Commonwealth, Department of Revenue, Harrisburg | 96.62 |

| | |
|---|---:|
| Municipal lien for water rents for the years 1957 to 1960 inclusive. The Burgess and Town Council of the Borough of Phoenixville v. McCausland Motors Inc., entered Sept. 30, 1960, at 10:10 A.M. in Mechanics Lien Docket U page 584 .. | 283.92 |
| 1959 Real estate taxes due the County of Chester ........ | 950.59 |
| 1960 County real estate taxes due County of Chester .... | 115.48 |
| 1960 School and township real estate taxes due the Township of Schuylkill ........ | 788.19 |
| The Bridgeport National Bank v. McCausland Motors Inc. and United States of America entered August 29, 1960 of July term, 1960, no. 70 ................. | 25,391.89 |
| Farmers & Mechanics National Bank of Phoenixville v. William H. McCausland and McCausland Motors, Inc., entered August 23, 1957 in Docket Q-4 p. 33 ........ | 5,005.23 |

$44,000.00

As further required by subsection (c) of that rule, a list of liens upon the property was attached to the schedule of distribution and certified by the proper officers. Many such liens appear of record against defendant, but we are here concerned only with the following, which are set forth in the order of their entry of record.

November 5, 1956, mortgage of Bridge-
port National Bank, plaintiff, amount
due ........................... $25,391.89

August 23, 1957, judgment of Farmers
& Mechanics National Bank of Phoe-
nixville, exceptant, amount due .... 18,232.00

June 26, 1959, lien of Commonwealth,
Bureau of Sales and Use Tax ...... 6,031.92

September 2, 1959, lien of the Common-
wealth, Bureau of Sales and Use Tax 1,590.28

October 23, 1959, lien of the Common-
wealth, Bureau of Sales and Use Tax 395.01

May 2, 1960, lien for 1959 real estate
taxes, amount due ................ 950.59

May 25, 1960, lien of the Commonwealth
Bureau of Sales and Use Tax ...... 288.60

June 2, and June 3, 1960, lien of Com-
monwealth, Department of Labor and
Industry to the use of Unemployment
Compensation Fund, total amount due 151.25

June 15, 1960, lien of the Common-
wealth, Bureau of Sales and Use Tax 569.19

August 17, 1960, lien of the United
States of America for Federal W. & E.
taxes, amount due ................ 543.50

September 30, 1960, municpal lien of the
Burgess and Town Council of the Bor-
ough of Phoenixville, for water rents
for 1957, 1958, 1959 to July 1960,
amount due ..................... 283.92

Additionally, there are the following:

Commonwealth of Pennsylvania for cor-
porate taxes, amount due .......... 96.62

1960 real estate taxes, due County of
Chester and Township of Schuylkill
and School District of Schuylkill Town-
ship, total amount due ............ 903.67

Exceptant has filed six exceptions to the sheriff's proposed schedule of distribution. In essence, they are as follows: 1. To the allowance of liens and to the proposed priority over exceptant's judgment lien given the various liens of the Bureau of Sales and Use Tax of the Commonwealth of Pennsylvania; 2. The allowance of the lien and the proposed priority over exceptant's judgment lien given the lien of the Department of Labor and Industry to the use of the Unemployment Compensation Fund of the Commonwealth of Pennsylvania; 3. The allowance of the lien and the proposed priority over exceptant's judgment lien given to the lien of United States of America; 4. The allowance of the lien and the proposed priority over exceptant's judgment lien given to the lien of the burgess and the town council of the Borough of Phoenixville for water rent, covering the years 1957-59, and to July, 1960; 5. The failure of the sheriff to give priority on distribution to the judgment lien of exceptant over all but sheriff's costs, realty transfer taxes due the Commonwealth and the Township of Schuylkill and the School District of Schuylkill Township, corporation taxes due the Department of Revenue of the Commonwealth, real estate taxes due for the years 1959 and 1960 and the mortgage; 6. To the failure of the sheriff to propose distribution to exceptant of the balance of the funds remaining after the payment of the items hereinbefore set forth in paragraph 5, which exceptant admits have priority.

We were orally advised by counsel for exceptant and by his brief that exception number 2 is withdrawn.

Exceptant, in the same manner, concedes that the Borough of Phoenixville has the right to file a municipal lien or claim against the subject property for water rent furnished to the property.

Exceptant does not specifically concede, but we are led to believe that it does not seriously press its argu-

ment that the municipal claim for water rents here involved is not entitled generally to a priority over exceptant's judgment lien.[1] The difficulty arises when the status of this claim is considered vis-a-vis exceptant's lien and the lien of the United States, as hereinafter discussed.

The real and difficult question is that raised by the first exception involving exceptant's judgment versus the liens of the Bureau of Sales and Use Tax of the Commonwealth, insofar as priority is concerned.

It is well established that the Commonwealth has a sovereign right over all creditors if it chooses to exercise that right: South Philadelphia State Bank's Insolvency, 295 Pa. 433. However, the legislature may choose not to exercise the right and may provide otherwise, as it has done in the case of unemployment compensation liens, directing that, on distribution of the proceeds of a judicial sale, they shall be first allowed and paid out of the proceeds of such sale, ". . . Provided, however, that the lien hereby created shall not be prior to preexisting, duly recorded real estate mort-

---

[1] The Borough Code of May 4, 1927, P. L. 519, art. XII, sec. 1202, cl. LII, as amended, 53 PS §46252, authorizes a borough to file and collect municipal claims for water rents, and article XXXIV, sec. 3401, as renumbered and amended, 53 PS §48401, authorizes boroughs to proceed for the recovery of municipal claims and taxes by lien. The General Municipal Law of May 16, 1923, P. L. 207, sec. 3, 53 PS §7106, provides: "All municipal claims which may hereafter be lawfully imposed or assessed on any property in this Commonwealth . . ., shall be and they are hereby declared to be a lien on said property, together with all charges, expenses, and fees added thereto for failure to pay promptly; and said liens shall have priority to and be fully paid and satisfied out of the proceeds of any judicial sale of said property, before any other obligation, judgment, claim, lien, or estate with which said property may become charged, or for which it may become liable, save and except only the costs of the sale and the writ upon which it is made, and the taxes imposed or assessed upon said property."

gages." See Act of December 5, 1936, second ex. sess., P. L. (1937) 2897, art III, sec. 308.1, as added and amended, 43 PS §788.1.

What, then, has the legislature provided in the case of sales and use tax? The Act of March 6, 1956, P. L. (1955) 1228, art V, sec. 548, as amended May 24, 1956, P. L. (1955), 1707, sec. 14, and November 21, 1959, P. L. 1556, sec. 16, and December 30, 1959, P. L. 2046, sec. 6, 72 PS § 3403-548, provides:

"(a) Lien Imposed. If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, addition or penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the Commonwealth upon the property, both real and personal, of such person but only after same has been entered and docketed of record by the prothonotary of the county where such is situated. . . .

"(b) Priority and Effect of Lien on Judicial Sale. All such liens shall have priority to, and be fully paid and satisfied out of, the judicial sale before any other obligation, judgment, claim, lien or estate with which the property may subsequently become charged or for which it may subsequently become liable; subject, however, to mortgage or other liens existing and duly recorded at the time the tax lien is recorded, save and except the cost of sale and of the writ upon which it is made. There shall be no inquisition or condemnation upon any judicial sale of real estate made by the Commonwealth pursuant to the provisions hereof. The lien of the taxes, interest and penalties, shall continue for five years from the date of entry, and may be revived and continued in the manner now or hereafter provided for the renewal of judgments, and a writ of execution may directly issue upon such lien without the issuance and prosecution to judgment of a writ of scire facias: Provided, That not less than ten days before issuance

of any execution on the lien, notice of the filing and the effect of the lien shall be sent by registered mail to the taxpayer at his last known post office address: And provided further, That the said lien shall have no effect upon any stock of goods, wares or merchandise regularly sold or leased in the ordinary course of business by the person against whom said lien has been entered, unless and until a writ of execution has been issued and a levy made upon said stock of goods, wares and merchandise.

\* \* \* \* \*

"(d) Priority of Tax. Except as hereinbefore provided in the distribution, voluntary or compulsory, in receivership, bankruptcy or otherwise, of the property or estate of any person, all taxes imposed by this act which are due and unpaid and are not collectible under the provisions of section 535 hereof, shall be paid from the first money available for distribution in priority to all other claims and liens, except insofar as the laws of the United States may give a prior claim to the Federal government. Any person charged with the administration or distribution of any such property or estate, who shall violate the provisions of this section, shall be personally liable for any taxes imposed by this act, which are accrued and unpaid and are chargeable against the person whose property or estate is being administered or distributed."

We shall hereinafter refer to these provisions as section 548 for the sake of brevity.

Here, of course, the various liens of the Bureau of Sales and Use Tax, totaling $9,358.04 now due, and each of them, were entered in point of time after exceptant's judgment lien. Exceptant contends that the provisions in subsection (b) of section 548, "All such liens shall have priority to, and be fully paid and satisfied out of, the judicial sale before any other obligation judgment, claim, lien or estate with which the prop-

erty may subsequently become charged or for which it may subsequently become liable; subject, however, to mortgage or other liens existing and duly recorded at the time the tax lien is recorded, save and except the cost of sale and of the writ upon which it is made" gives to its judgment priority on distribution over said tax liens and renders the sheriff's schedule of proposed distribution in error. Exceptant cites no authority, since, apparently, there is none directly on point, but stands solely on the language of the statute, additionally arguing that, from a practical point of view, no lender could make a mortgage or judgment loan with any safety if the act is construed otherwise.

The Commonwealth, on the other hand, contends that the provisions of subsection (b) of section 548, pertaining to priority, payment and satisfaction from the proceeds of "the judicial sale" apply only in the event of a judicial sale on the Commonwealth's lien for sales and use tax and that the provisions of subsection (d) of section 548 shall apply, under the "or otherwise" phrase, when a judicial sale is held on other than the sales or use tax lien. Or if subsection (d) is not properly so construed and interpreted, then the Selective Sales and Use Tax Act is silent on the subject of priorities on distribution after a sale on other than the Commonwealth's lien, and we must then look to the general provisions of section 1401 of The Fiscal Code of 1929, as reenacted August 19, 1953, P. L. 1146, sec. 6, 72 PS §1401, which gives Commonwealth tax liens and claims priority in the absence of specific provisions to the contrary. In addition, the Commonwealth asserts that local tax liens and claims are here involved and that, as a correct proposition of law, the Commonwealth has a priority over them on distribution. Hence, the sheriff's proposed schedule is correct.

Subsections (b) and (d) of section 548 of the Selective Sales and Use Tax Act are by no means clear. We

must, therefore, seek the intention of the legislature, being guided by The Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 51, et seq.; 46 PS §551 et seq., the general proposition expressed by section 1401 of The Fiscal Code and the case law that the State generally has a prior right over all creditors. Considered in this light, it is our opinion that the Commonwealth makes a persuasive argument that the provisions of subsection (b) of section 548 pertain only to distribution when the sale is based upon the lien for sales and use tax.

A close examination of subsections (a) and (b) reveals that they refer entirely and explicitly to the Commonwealth's lien for sales and use taxes, and execution thereon, except the first sentence of (b) which, unfortunately, is ambiguous. The rest of those two subsections provide for the lien, its entry; that no inquisition and condemnation is necessary on execution; that a writ may issue directly. Provision is further made for the duration of the lien, its revival and the necessity of notice to the taxpayer before execution on the tax lien. Finally, the tax lien shall have no effect upon goods, wares and merchandise regularly sold or leased in the ordinary course of business until levy thereon. Additionally, the first sentence of (b) refers to "the judicial sale" rather than "any" or "a" judicial sale as is the case in other statutes bearing on the same question, but relating to other taxes.

That the sales and use tax lien shall have priority to and be first paid before any other obligation, judgment, claim, lien, or estate with which the property may subsequently become charged or liable, in our opinion, is really surplusage, since such would be the case in any event. The "subject however" clause then becomes further confusing. One construction thereof might indicate that while preëxisting obligations, judgments, etc., have priority to the tax lien, preëxisting

and recorded mortgages are the exception and *not* given priority. We cannot conceive that the legislature intended this absurd interpretation. Yet, if one accepts the clear implication of the first clause, that preëxisting obligations, judgments, claims, liens or estates, which is very broad language, are given priority, then there is really no necessity or reason to add that preexisting mortgages on other liens are also entitled to priority over the tax lien. Efforts, therefore, to interpret the intent of the legislature from the language of section 548(b) alone lead to nought. However, the fact remains that the entire provisions of 548 are related to the Commonwealth's lien, and it is reasonable to conclude that the sale referred to is only when based on such lien.

Furthermore, section 51 of The Statutory Construction Act of May 28, 1937, P. L. 1019, provides that ". . . the intention of the Legislature may be ascertained by considering, among other matters—

"(1) the occasion and necessity for the law;
"(2) the circumstances under which it was enacted;
"(3) the mischief to be remedied;
"(4) the object to be attained;
"(5) the former law, if any, including other laws upon the same or similar subjects;
"(6) the consequences of a particular interpretation;
"(7) the contemporaneous legislative history; and
"(8) legislative and administrative interpretations of such law."

Here, the occasion and necessity for the law was fiscal and its object is specifically "to provide revenue."

An examination of the provisions of section 548, as originally enacted in 1956, discloses that substantially the same language was then used, except that subsec-

tion (b) referred only to real estate rather than property generally, and there was no subsection (d). The latter was added by the first amendment of May 24, 1956. The amendment of November 21, 1959, substituted "property, both real and personal," for "real estate," and it was further provided that no inquisition or condemnation was necessary on a judicial sale of real estate made by the Commonwealth on its sales and use tax lien. Additionally, in subsection (d), the words, "Except as hereinbefore provided," were added. The last amendment of December 30, 1959, provided for notice to the taxpayer prior to execution and does not substantially affect the problem before us.

Our attention has not been called to the legislative history of this section of the law, and we know of no legislative or administrative interpretations thereof.

The consequences of the various interpretations contended for are of interest, however. As noted, exceptant argues that unless its interpretation is adopted, no lender can extend credit without fear of sales and use tax liens subsequently entered taking priority. However, no matter what the nature of the tax, a lender has always run this risk as opposed to the sovereign's rights. For instance, in dealing with a similar question involving an unemployment compensation tax lien and a prior *judgment* creditor, the court held in Blue Ball National Bank v. Diller, 53 D. & C. 445-50, citing Erie v. Piece of Land, 339 Pa. 321.

". . . that the statute was not invalid since the mortgagee's contract with his debtor was subject to the implied condition that the land would continue to be taxed and that such taxes must be paid out of the land, citing Bryan's Appeal, 101 Pa. 389, 393, in which Judge Paxson said:

" 'It has never been held that charges upon or estates in land created by the owner thereof can avail as against the taxing power of the Commonwealth. . . .

If it were not so, the owner of real estate could wholly defeat the taxing power by charging it with the payment of a sum of money equal to its full value.'

"This reasoning of the court is supported by the great weight of authorities which base their decisions not only on the concept of the sovereignty of the State as regards taxation, but also on the theory that the owner of the fee holds his title subject to the paramount right of the public and the lienor takes his security with notice of that paramount right."

And in Harper v. Consolidated Rubber Co., 284 Pa. 444, the court had occasion to construe the Act of June 15, 1911, P. L. 955, the predecessor to section 1401 of The Fiscal Code, and to consider whether taxes settled against defendant corporation after a purchase-money mortgage was recorded should have priority on distribution of the proceeds of a sheriff's sale. In holding that the Commonwealth was entitled to priority, the court distinguished between a mortgage given by defendant's predecessor in title and one given by defendant corporation itself, as section 1401 of The Fiscal Code presently provides, and Mr. Justice Moschzisker said at page 450: ". . . in the present instance the land passed directly from plaintiff to the corporation and, when taking the mortgage from the latter, in August, 1921, plaintiff knew that the Act of 1911 in express terms gave a preference to the Commonwealth for State taxes which might, in the future, be assessed against the mortgagor."

Additionally, section 52(5) of The Statutory Construction Act, supra, provides: "That the legislature intends to favor the public interest as against any private interest." In Schoyer v. Comet Oil & Ref. Co., 284 Pa. 189, 193, on the subject of priority of State tax liens, the court said that,

"Our first thought must always be the preservation of the government [and the] enforcing of lawful means

necessary to successfully carry it forward; the means should always be available for its continued security, not hindered or prevented by lesser rights which may suffer because of such enforcement; the common good is superior to individual or private rights; [the State] therefore is a *natural equity* fairly entitled to first rank in the list of claims that may be had against any or all property. The protection which individuals receive at the hands of the government is compensation for any so-called impingement of right."

This quotation from Schoyer was cited in Harper v. Consolidated Rubber Co., supra, at page 452, where the opinion in that case continued: "This disposes of any possible question of equities between the Commonwealth and plaintiff; but, in addition, plaintiff, as heretofore stated, put himself in the situation of a mortgagee with full knowledge that his mortgage, or any judgment for the debt secured thereby, was, by the express words of the Act of 1911, postponed to state taxes which might be assessed in the future against the corporation from which he took the mortgage."

In Jones v. Tatham, 20 Pa. 398, 411, the court said: "The general business of the legislative power is to establish laws for individuals, not for the sovereign; and, when the rights of the Commonwealth are to be transferred or affected, the intention must be plainly expressed or necessarily applied [sic]." See also Baker v. Kirschnek, 317 Pa. 225, at page 231, where Endlich on the Interpretation of Statutes, sec. 161, is cited for the principle that the legislature does not intend to deprive the crown of any prerogative right or property unless it expresses its intention to do so in explicit terms or makes the inference irresistible.

For these reasons, conflicting claims of local and Commonwealth taxing authorities have been consistently resolved in favor of the sovereign's superiority. See Westmoreland County, to use, v. Westmoreland

Brewing Company, 8 D. & C. 378; Commonwealth v. Philadelphia Pure Rye Whiskey Distilling Company of Pa., Ltd., 38 D. & C. 245; Fleetwood Borough's Petition, 52 D. & C. 529; Odabashian v. Baker, 14 D. & C. 2d 489; and Tamaqua National Bank v. Kelly's Supper Club, Inc., in the Court of Common Pleas of Luzerne County, no. 2204, October term, 1960, as yet not reported.

We cannot see that the legislature, in section 548, has clearly, plainly, or necessarily by implication, deprived the Commonwealth of its right to priority on distribution when a judicial sale is held on other than the Commonwealth's lien for sales and use tax. The provisions of section 548(a) and (b) appear to refer only and exclusively to the Commonwealth tax lien and a sale on such lien.

We do not think, however, that subsection (d) of section 548 was intended to control in other instances. Rather, we are of the opinion that subsection (d) refers only to distribution in receivership, bankruptcy, or like cases. The phrase, "or otherwise," following the word "bankruptcy" without punctuation, as well as the other provisions of that subsection, particularly those referring to the preference to be given to the United States Government, lead us to conclude that the phrase, "or otherwise" does not refer to any other distribution generally but relates only to bankruptcy, receivership, and situations of insolvency.

That being so, we must then look to section 1401 of The Fiscal Code of August 19, 1953, P. L. 1146, 72 PS §140, which provides as follows:

"All State taxes imposed under the authority of any law of this Commonwealth, now existing or that may hereafter be enacted, and unpaid bonus, penalties, and all public accounts settled, assessed or determined against any corporation, association, or person, including interest thereupon, shall be a first lien upon the

franchises and property, both real and personal, of such corporation, association, or person, from the date of settlement, assessment or determination and whenever the franchises or property of a corporation, association, or person shall be sold at a judicial sale, all taxes, interest, bonus, penalties, and public accounts due the Commonwealth shall first be allowed and paid out of the proceeds of such sale before any judgment, mortgage, or any other claim or lien against such corporation, association, or person":

Under these provisions, therefore, the liens of the Bureau of Sales and Use Taxes shall first be allowed and paid out of the proceeds of this judicial sale before any judgment, mortgage or any other claim or lien, specifically before exceptant's judgment lien. The first exception must be overruled and dismissed.

In connection with the Federal tax lien, the United States has not entered an appearance and, hence, we do not have the benefit of brief. Exceptant, having concentrated its attention on sales and use tax liens, has neglected this phase of the exceptions in its brief. We note, first, that there is nothing in this record to indicate a receivership, bankruptcy, or insolvency, and, hence, we are not concerned with the absolute priority given to the United States under Revised Statutes, §3466, 31 U. S. C. A. §191, in such cases. Nor are we dealing with personal property or with a judgment for the recovery of specifically designated property. Where the taxpayer is solvent, except in circumstances not here relevant, there is no specific provision giving priority to a United States lien against some other competing lien entered against the same property. Priority depends upon the time when the respective liens became perfected. A lien competing for priority with a United States lien becomes perfected at the time it ripens into a judgment of a court of record, and the lien first in time is first in right according to the com-

mon law principle: United States v. City of New Britain, 347 U. S. 81, 74 S. Ct. 367.

The Internal Revenue Code of August 16, 1954, in 26 U. S. C. A. §§6321-6323, 68 A. Stat. 799, provides, as to Federal tax liens, that the lien imposed by section 6321 shall arise at the time the assessment is made but as provided in section 6323, "shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate—(1) . . . In the office designated by the law of the State or Territory in which the property subject to the lien is situated." Thus, where, as here, the lien of exceptant as a judgment creditor was perfected prior to the time the United States filed notice of its lien on August 17, 1960, exceptant is entitled to priority.

We are thus presented with the further problem of circuity of liens, since exceptant's judgment lien is prior in time and right to the United States tax lien, which, in turn, is prior in time and right to and cannot be impaired or superseded by the municipal claim,[2] but the latter is given statutory preference [3] to exceptant's judgment lien. It thus appears that, as to the three contesting liens, the last in succession is superior to the first, but inferior to the second, and the first is superior to the second. In such a situation, the third gains no superiority because it cannot be preferred to the first without being preferred also to the second, to which it has no priority: Dowling v. Vallett, 70 Pa. Superior Ct. 481, and cases therein cited, beginning with Wilcocks v. Waln, 10 S. & R. 380 (1824). Such seems to us to be in accord with the opinion in

---

[2] See Littlestown National Bank v. Penn Title Works Co., 352 Pa. 238; Michigan v. United States, 317 U. S. 338; United States v. City of New Britain, 347 U. S. 81, 74 S. Ct. 367.

[3] General Municipal Law, supra.

United States v. City of New Britain, supra, where at page 88, it is said, "The United States is not interested in whether the State receives its taxes and water rents prior to mortgages and judgment creditors. That is a matter of a state law. But as to any funds in excess of the amount necessary to pay the mortgage and judgment creditors, Congress intended to assert the federal lien."

Exceptions 3 and 4 must, therefore, be sustained. Exceptions 5 and 6 must be sustained in part.

### Order

And now, July 21, 1961, upon exceptions filed by Farmers and Mechanics National Bank of Phoenixville to the sheriff's schedule of distribution filed, exception no. 1 is dismissed; exception no. 2 is withdrawn; exception no. 3 is sustained; exception no. 4 is sustained; exceptions no. 5 and no. 6 are each sustained in part as to the lien of the United States of America and the municipal lien of the Burgess and Town Council of the Borough of Phoenixville.

The sheriff of Chester County is ordered and directed, after payment of the following:

| | |
|---|---|
| Sheriff's costs | $435.29 |
| Transfer tax on deeds due the Commonwealth | 440.00 |
| Transfer tax on deeds due Township of Schuylkill and/or School District of Schuylkill Township | 440.00 |
| Commonwealth, Department of Revenue, Bureau of Sales and Use Tax | 9,358.04 |
| Commonwealth, Department of Labor and Industry, to the use of the Unemployment Compensation Fund | 151.25 |
| Corporation taxes due the Commonwealth, Department of Revenue | 96.62 |
| 1959 Real estate taxes due the County of Chester | 950.59 |

1960 Real estate taxes due the County of Chester ...................... 115.46

1960 School and township real estate taxes due the School District and the Township of Schuylkill ............ 788.19

The Bridgeport National Bank....... $25,391.89

to make payment of the balance to exceptant, Farmers and Mechanics National Bank of Phoenixville.

This matter having been heard by and argued before the above member of this court, when properly we believe that it should have been by the court en banc, the other members of this court, having read the respective briefs and consulted with the hearing judge and each other in this matter, do enter their respective concurrence and dissent, as follows, in order that there shall be no question that the judgment is by a majority of the court: Gawthrop, P. J., concurring; Lichtenfeld, J., dissenting.